In the Matter of the Estate of John S. Hoffman, deceased. Appeal of George D. Hoffman.

*Decedents' estates—Executors and administrators—Collection of rents by administrator.*

Where all the parties interested in a decedent's estate agreed that the administrator should collect the rents and manage the realty, and the administrator, by his conduct in the management of the estate both personal and real, and by including in his account in the orphans' court items relating to the realty, induced the widow and heirs to desist from resorting to any other tribunal for the adjustment of the accounts until the statute of limitations had intervened to bar a number of items relating to the realty, the administrator is estopped from denying the jurisdiction of the orphans' court over the whole account.

Argued March 15, 1898. Appeal, No. 314, Jan. T., 1897, by George D. Hoffman, from decree of O. C. Lycoming Co., Dec. T., 1888, No. 21, dismissing exceptions to auditor's report. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The facts appear by the opinion of METZGER, P. J., which was as follows :.

A number of exceptions have been filed by the administrator to the report of the auditor in this case. The first exception we regard as an important one, involving, as it does, the question whether the administrator should account in the orphans' court for the rents, issues and profits of the farm. There can be no doubt that as a general rule the administrator is not chargeable in his account as administrator with anything but the personalty. Upon the death of the intestate the real estate goes to the heirs, and the administrator has no power over it except in the manner pointed out by the act of assembly, when such real estate is wanted for the payment of debts. As said in McCoy v. Scott, 2 Rawle, 222, " the real fund is not absolutely, but sub modo, assets in his hands." That case decides that " the administrator who collects the rents and profits of the realty of the intestate holds them as trustee for the heirs, and not for the creditors. Until the right of the heirs is divested by a sale by the administrator under an order of the orphans' court, or by execution, the right of the heirs to the land is as absolute as that of their ancestor." There can be no doubt, under the decisions in Pennsylvania, that the administrator cannot be compelled against his will to account in the orphans' court for the rents, issues and profits of the real estate received by him, as they do not belong to the estate but to the heirs, and they alone are interested therein. When, therefore, the administrator takes possession of the realty and undertakes to manage it, he must be held to do so as the agent of the heirs, who alone can call upon him in such case for an account. This they could not do in the orphans' court, but would have to resort to the court of common pleas, which is the proper forum in which to account in such case. This is expressly ruled in the case of

appeals of Fross and Loomis, 105 Pa. 259 : " An administrator is not properly chargeable with the rents of his intestate's realty. If he takes charge of the realty, and collects the rents therefor, he acts merely as agent for the heirs ; nor does he bind himself as administrator by assuming to act in that capacity. His liability as administrator, and that of his sureties, is limited to the matters appertaining to his office." The same principle is decided in Walker's App., 116 Pa. 419. In that case it was contended that the accountants had not in fact charged themselves with all the rents, issues and profits which they had actually received, and Justice CLARK, in delivering the opinion of the Court, on page 430, says : " As the realty, as well as the personalty, was to be equally divided among the testator's children, and the creditors have all been paid, it would be just and fair enough, perhaps, if the parties were willing, to allow the rents and profits received, and the taxes and insurance and repairs expended, to be adjusted in the account; but it was contended on the part of the appellees that the accountants had not in fact charged themselves with all the rents which they had actually received. As the accountants were not legally bound to charge themselves with any of these rents, it was, of course, futile and useless to enter into a contest of the account respecting the rents alleged to have been omitted. The only practicable method of procedure, therefore, was to turn the parties over to a forum which had proper jurisdiction of the subject-matter in dispute, and in which their respective rights might be ascertained and properly adjudicated." These cases lay down the general rule. It does not follow that there are no cases in which the facts are such as to make them an exception to the rule laid down.

It is contended in the case now before us, that it was expressly agreed by and between the heirs and the administrator that the latter should take charge of the realty and manage it. The evidence shows such an agreement between the parties, and, though there was no express agreement to account, the administrator clearly understood that it was his duty in his administrative capacity to look after and manage the said real estate. We think there is sufficient evidence to warrant us in finding that it was the understanding of all the parties that the administrator should take charge of and manage the real estate,

and that it was to be treated as the estate of the decedent and accounted for as such. There was an express agreement, so far as the proceeds of the timber sold to Smithgall and Weaver was concerned, that it should be passed upon by the auditor in stating the distribution account between the heirs and the widow. It is further contended by the widow and heirs that the administrator having taken charge of the real estate by their consent, and having managed it in his capacity as administrator, receiving as administrator the rents, issues and profits thereof, and paying the taxes, insurance, labor, etc., on the farm, in the same capacity, as shown by his checks given as administrator, and in some instances paying the same out of the estate's fund and not out of the rents and profits of the farm, and having in his account filed as administrator claimed credit for expenses connected with the farm, such as taxes, insurance, and farm expenses, and also claimed, as shown by the evidence, for his services in looking after and managing the farm, in all of which the widow and heirs acquiesced, he is now estopped from denying his liability to account in the orphans' court for his management of the realty.

It is a fair inference from the evidence in this case that it was understood between the widow and the heirs and the administrator, that he was managing the real estate, not as their agent, but as administrator, in the same manner as he had charge of and managed the personal estate. It is evident, too, from the fact of his making certain charges and claiming certain credits with respect to the real estate that he was under the impression that he had the right to settle this account in the orphans' court, the same as he settled his account of the personal property. It would seem, also, from the exceptions filed by the widow and heirs to his account, that they were under the same impression, for they complained by their exceptions that he did not charge himself with all the proceeds of the farm. We hear of no objection, such as is now filed to the auditor's report, until the audit had progressed for some time, and until a number of the items with which the administrator would be chargeable would be barred by the statute of limitations if the parties were now turned over to another forum to begin proceedings anew. In short, the administrator has been guilty of such conduct in the management of the estate, including the realty, and in the

filing of his account, as to induce the widow and heirs to desist from resorting to any other tribunal for the adjustment of the accounts between him and them until the statute of limitations has intervened to bar a number of items in the account. If we are now to determine that the widow and heirs must resort to any other tribunal to recover what is due them from the administrator for the receipts of the farm, we leave them without remedy for a considerable amount to which they would have been legally entitled but for the delay which was wholly caused by the conduct of the administrator. We are aware that, as a general rule, the want of jurisdiction can be taken advantage of at any stage of the proceedings; also, that where a court has not jurisdiction of the subject-matter, jurisdiction cannot be given it by consent; but we think we do not violate this principle if we now determine that, by reason of the agreement between the parties, the continued acts of the administrator, acquiesced in, as they were, by the other parties interested, and in view of the fact that he, himself, invoked the jurisdiction of the orphans' court in the first instance, thus causing by his acts and conduct large expense and loss, and making ineffectual by reason of the delay any other remedy which the parties might have had to have their rights adjusted in the proper tribunal, he is estopped from now alleging want of jurisdiction in the orphans' court. What harm can result from holding him to liability in this proceeding? All the parties to be affected have acquiesced in all that has been done until the administrator found he had made a mistake in invoking the jurisdiction of the orphans' court, because he discovered that when both sides of the account were presented before the auditor there would be some balance due the widow and heirs which he was unable to wipe out by his expense account. So far as he was concerned he settled his account, including his account of the real estate, in the orphans' court, and it would seem to us to be enabling him to perpetrate a fraud on the other parties if, at this late day, he were now permitted to have his own act in said court set aside, for no other purpose, it seems to us, than to enable him to get rid of accounting for some period of time for the proceeds of the farm. We are therefore of opinion that under the peculiar facts in this case the administrator is estopped from now raising the question of the jurisdiction of the orphans'

court.  We are also of opinion that where, as in this case, all
the parties interested permit the real estate to be treated as
assets of the estate, there is nothing to prevent the orphans'
court from assuming jurisdiction of the account of the adminis-
trator with respect to such realty, especially where he himself
has invoked the jurisdiction of said court.

It has been held in Massachusetts and some other states that
where there is an understanding or agreement that the adminis-
trator shall take the rents and account for them for the benefit
of the estate, in such a case the administrator would account in
the probate court for such rents with the general assets, accord-
ing to such agreement, but not necessarily by force of any
requirement of the statute.  Such is said to be a somewhat
common practice : Stearns v. Stearns, 1 Pickering, 158.  In
that case it was contended that the administrators had no right
to enter on real estate of their intestates . . . . and were not
by law chargeable with the rent or income in the administration
account; but the court held them liable to account in that case,
holding that the consent of all parties might be presumed be-
cause the administrators had voluntarily credited the rents in
their first account, and the other heirs made no objection,
excepting as to the amount which should be credited ; and the
administrators continuing afterwards to occupy the land, with-
out notice to the other heirs of any change, the latter had a
right to consider they were still holding on the same terms and
would be chargeable in the same manner as before.  See, also,
Kimball v. Sumner, 62 Maine, 310.  As to the other exceptions
on the part of the administrator, saving the ninth, we do not
think they can be sustained.  We think there was evidence to
warrant the auditor in all his findings of fact, and that there
was evidence to warrant the disposition he made of the various
items.  So far as the household expenses are concerned, which
the administrator claims to have paid, we think there was no
evidence warranting the auditor to find any agreement for the
payment of those expenses, without which he clearly could not
recover them.  We think, however, the auditor should have
allowed something more than he did for the services of the
administrator.  Since we hold him chargeable with the rents,
issues and profits of the real estate, it would not, in our judg-
ment, be too much to allow him $300 in addition to the com-

pensation allowed him by the auditor, as we do not think he was guilty of such fraud or misconduct as should deprive him of all compensation. The exceptions on the part of the widow and heirs are also dismissed.

And now, to wit: July 10, 1897, the exceptions to the report of the auditor are all dismissed except the ninth exception of the administrator, which is sustained, and it is ordered, adjudged and decreed that the administrator be allowed the sum of $300 in addition to the compensation allowed him by the auditor; and the report of the auditor is referred back to him, with instructions to allow the said additional sum of $300 to the administrator, and to redistribute the balance in his hands in accordance with this opinion.

*Errors assigned* were in dismissing exceptions to auditor's report.

*T. M. B. Hicks*, with him *G. B. M. Metzger* and *W. H. Spencer*, for appellant.—The orphans' court is not a court of general jurisdiction, and the subjects of its jurisdiction are such only as are conferred by or implied from legislation: Groff v. Groff, 14 S. & R. 181; Shollenberger's App., 21 Pa. 337; Weyand v. Weller, 39 Pa. 443.

The administrator or executor of a decedent is not accountable in the orphans' court for rents, issues or profits of the real estate, even though he assumed to collect them in that capacity: McCoy v. Scott, 2 Rawle, 222; Adams v. Adams, 4 Watts, 160; Schwartz's Est., 14 Pa. 42; Fross's App., 105 Pa. 258; Walker's App., 116 Pa. 419.

The cases of Stearns v. Stearns, 1 Pickering, 158 and Kimball v. Sumner, 62 Me. 310, upon whose authority the court below expressly based its conclusion, were predicated expressly on the provisions of the statutes of those respective states.

Jurisdiction over the subject-matter cannot be conferred either by consent, by laches or by estoppel: Collins v. Collins, 37 Pa. 387; Deihm v. Snell, 119 Pa. 316; Mansel's App., 4 Dist. Rep. 487; Hill v. Tionesta Twp., 129 Pa. 525; Johnstone v. Fritz, 159 Pa. 378; Schuylkill County v. Minogue, 160 Pa. 164; Smith v. Wildman, 178 Pa. 245; Cooley's Constitutional Limitations, * 398.

*William D. Crocker*, for appellees, was not heard, but cited on the question of jurisdiction: McCoy v. Scott, 2 Rawle, 222; Loomis's App., 105 Pa. 258; Walker's App., 116 Pa. 419.

PER CURIAM, April 4, 1898:

We are not convinced that the special facts and circumstances of this case did not justify the court below in departing from the ordinary rule, and in disposing of it as shown by the record. A careful consideration of the evidence has satisfied us that the appellant has not been unjustly prejudiced by the action of the court below, and his conduct, as found by the learned president of that court, was not such as should induce us, on any technical ground, to relieve him from the consequences of a decree of which he at least has no just reason to complain.

Decree affirmed and appeal dismissed at appellant's costs.