## Martinzik Estate

*Michael C. McManus*, for accountant.

*Ostroff, Lawler & Baker*, for claimants.

*Drew J. T. O'Keefe*, United States Attorney, and *Mabel G. Turner*, Assistant United States Attorney, for the United States of America.

*Judith J. Jamison*, Special Assistant Attorney General, for Commonwealth.

BOLGER, J., January 5, 1962.—Gregory Martinzik, a Russian emigree, died in the United States Veterans Hospital at Perrypoint, Maryland, on August 12, 1950, where he had been a patient for 27 years. He left a gross estate which is now approximately $54,000, consisting of accumulations of disability compensation

following his service in the United States Army in World War I. Letters of administration were granted by the Register of Wills of Philadelphia County.

At the audit of the administrator's account, three sets of claimants to the fund appeared: (1) Persons claiming to be the widow and the son living in Russia; (2) the Government of the United States, which claimed as Trustee of the General Post Fund pursuant to the Act of Congress of June 25, 1910, 36 Stat. 736, 38 U. S. C. A. §17, as amended (now 38 U. S. C. A. §5220) which provides that after December 26, 1941, any veteran dying while a patient in a Veterans Hospital while being furnished care and treatment by the Veterans Administration and shall not leave surviving him any spouse, next of kin or heirs entitled to his personal estate, all such property including monies and choses in action owned by him at his death and not disposed of by his will or otherwise shall become the property of the United States as trustee for the sole use and benefit of the General Post Fund; (3) the Commonwealth of Pennsylvania claimed the fund as custodian in the alternative under section 1314 of The Fiscal Code of April 9, 1929 P.L. 343, or under the so-called Iron Curtain Act of July 28, 1953, P. L. 674, 20 PS §1155*

The auditing judge, when the account of the administrator came before him, appointed a master to ascertain the existence of heirs, if any, of decedent. The master held several hearings, during the course of which decedent's file in the office of the Veterans Administration was produced. This record discloses that decedent had a wife, Anna, and a son, Michael, living at Veliky, Molodkov, in the Ukraine in Russia; that decedent was adjudged incompetent in 1925 by the Court of Common Pleas of Philadelphia County and a guardian appointed for his estate. Thereupon, by

agreement between the guardian and the Veterans Adminstration, the veteran's monthly compensation was apportioned $70 per month to the guardian and $30 per month to the widow living in Russia. However, apparently due to the action of the Secretary of the Treasury of the United States, pursuant to an Act of Congress dated October 9, 1940, the sending of the monthly benefits to the widow in Russia ceased as of that date. The record evidence of the existence of the widow and of the son as of October 1940 is so abundant that it is unquestioned.

On behalf of the Russian claimants, there were produced before the master a power of attorney and affidavits executed by the claimants before the American Consul in Moscow and depositions and other documentary evidence, mostly extracted from the Veterans Administration's files, taken before a Russian notary and authenticated by the consul. When the master was disinclined to accept these documents in evidence, except for the purpose of showing that two persons of the names of Anna and Michael Martinzik employed Ostroff and Lawler their local counsel to represent them in the distribution of the estate, Mr. Ostroff, on behalf of his clients, filed a petition with the court en banc for letters rogatory to take the testimony of his clients in Russia, asserting that it was the only manner in which their testimony could be made competent. This petition was objected to by the Government of the United States. By a opinion and decree of this court dated April 1955, the petition was refused, the court citing Garrett's Estate, 335 Pa. 287, and asserting that the United States would be deprived of its right of cross examination if the petition were granted. In Garrett's Estate, supra, it was held that the claimants must appear personally in court. No exceptions were filed to this decree, and no appeal taken from it.

Thereupon, Mr. Ostroff pressed his offer of the documentary evidence before the master. Both the United States and the Commonwealth of Pennsylvania objected to this ex parte testimony taken without authority of the court. The master thereupon excluded the testimony except for the purpose mentioned. In his report, the master found as a fact that decedent was survived by heirs, but that the claimants had not succeeded in identifying themselves as the heirs. In doing so, he recommended refusal of the plea of the Government of the United States that the widow and the son should be presumed to be dead, and, on the contrary, the application of the presumption of the continuance of life, of survival.

The auditing judge, before passing upon the master's report, heard the testimony at the judge's request of the American Consul in Russia, Edward L. Kellam, who took the affidavits of the Russian claimants and who happened to be in this country at that time. Mr. Kellam testified that he had no personal recollection of the claimants or of the incident of taking the affidavits of the claimants; that the claimants appeared before him in Moscow with the powers of attorney and the depositions which had been prepared by a representative of Inkollegia, a collective association of lawyers. This was pursuant to common practice of Russians claiming funds in the United States. He said that the claimants produced their passports, which are carried by all Russian citizens, and that he had no reason to doubt their identity, although he did not so certify in the affidavits. Mr. Kellam swore the claimants to the facts stated in the documents which they executed in his presence, but he did not state that the affiants were known to him to be the persons they represented themselves to be.

The auditing judge, because of delays, either re-

quested by the parties or because of pending decisions of this court in other related cases, filed an adjudication to which he later added a supplement, and after both of these adjudications had been argued on exceptions before the court en banc, he requested that the matter be returned to him for further consideration. He thereupon filed a readjudication to which all parties, except the accountant, filed exceptions.

In the first and supplemental adjudications, the auditing judge, relying upon the presumption of the continuance of life, found as a fact that decedent was survived by heirs, but that the Russian claimants had not established themselves as the widow and the son of decedent. He refused to apply the presumption of death as requested by the United States Government and awarded the funds to the Treasury of Pennsylvania through the Department of Revenue pursuant to the Act of July 28, 1953, on the ground that any Russian beneficiaries would not receive the enjoyment, use, benefit and control of the money. In his readjudication, however, the auditing judge again refused to apply the presumption of death of the widow and the son and, although he found that the presumption of survival was not rebutted, he refrained from making any finding respecting survivorship except that the Russian claimants were not the next of kin. He sustained the master's action in refusing to admit into evidence the documentary proof offered by the Russian claimants except for the purpose of showing that they had employed Ostroff and Lawler as their attorneys to represent them in the case. The readjudication also rejected Ostroff and Lawler's request for counsel fees and expenses in the amount of $9,171.95. The funds were thereupon awarded back to the administrator for further accounting not more than five years thereafter in the belief that further evidence might be forthcoming in that period of time.

The Russian claimants have filed exceptions to the refusal to accept the documentary matter into evidence and to the auditing judge's refusal to allow counsel fees and expenses. The Government of the United States excepts on the ground that the presumption of death of the widow and the son should have been applied. The Commonwealth of Pennsylvania excepts because the funds were awarded back to the administrator and not to the Treasury of the Commonwealth.

Our initial question is whether the learned auditing judge committed manifest error in his findings of fact, the inferences to be drawn from them or in his application of the law: Miller's Estate, 279 Pa. 30; Jac Estate, 355 Pa. 137. We find no such manifest error, except in the award back to the administrator as hereinafter noted.

The two questions are: (a) Whether decedent was survived by heirs, and (b) whether the Russian claimants are the heirs. These questions will be treated in inverse order.

The burden is upon these claimants to prove their relationship to decedent by a fair preponderance of trustworthy and satisfying evidence: Link's Estate (No. 1), 319 Pa. 513. Therein the court held (page 519) :

"Incompetency may come from deficiency within the affidavit or from some extraneous cause. Incompetency covers a wide field. Ex parte affidavits are generally inadmissible as not being the best evidence, especially when the persons making them are living and able to testify either in court or by deposition . . . Direct testimony is of a higher grade and should be insisted upon in pedigree cases."

Also page 522:

"The evidence to sustain relationship must bear on every material feature necessary to support a finding of kinship. It must be grounded on a reasonable cer-

tainty and come from witnesses whose truth and candor are not questioned. To defeat the claim of the Commonwealth the evidence must be so clear, precise and definite in quality and quantity as to satisfy the court below that the relationship claimed existed."

We are of the unanimous opinion that the auditing judge was correct in his conclusions that the Russian claimants failed to establish their identity as the wife and son of decedent by a fair preponderance of trustworthy and satisfactory evidence, and that the evidence was not clear, precise and definite in quality and quantity.

Unless the proffered documentary proof is admissible, the record is barren of direct evidence of the identity of the Russian claimants as the wife and son of decedent. There are several reasons why this documentary proof is not admissible. The first reason is that the failure of the Russian claimants to appeal from the refusal by this court to permit the taking of their testimony by letters rogatory bars them from attempting to introduce the testimony in any way other than by the personal appearance of the claimants in court: Fine v. Soifer, 288 Pa. 164, and State Hospital for Criminal Insane v. Consolidated Water Supply Co., 267 Pa. 29. This decree was a final judgment from which an appeal to the Supreme Court lay under section 771 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.771: "Any party in interest who is aggrieved by a final order or decree of the orphans' court . . . may appeal therefrom to the proper appellate court": Garrett's Estate, supra.

The method adopted by the claimants of trying to have the powers of attorney and affidavits admitted in evidence was, therefore, illegal and improper, and the rejection of it by the master and by the auditing judge was correct.

The Russian claimants, however, cite an Act of Congress and two Acts of the Pennsylvania Legislature upon which to base their claim for the admissibility of this evidence. The Act of Congress of June 25, 1948, chap. 646, 62 Stat. 947, amended May 24, 1949, chap. 139, §92(b), 63 Stat. 103, 28 U. S. C. A. §1741, provides that a copy of any foreign document of record or on file in a public office of a foreign country or political subdivision thereof, authenticated by a certificate of a consular officer of the United States under seal of his office that the copy has been certified by that lawful custodian, is admissible in evidence. The Pennsylvania Act of April 27, 1876, P. L. 49, sec. 1, 28 PS §223, provides that the official acts and exemplifications of foreign notaries in accordance with the laws of their respective countries "shall be prima facie evidence of the matters therein set forth," provided they are authenticated by the local American Consul. The Pennsylvania Act of July 24, 1941, P. L. 490, sec. 9, as amended June 21, 1947, P. L. 855, sec. 1, 21 PS §291-9(3), provides that when acknowledgment is taken by a notary public or a judge or clerk of a court of record of the country where the acknowledgment is made, and the certificate shall be authenticated by a certificate of a diplomatic or consular officer of the United States certifying to the official character of such officer, it shall be admissible in evidence. The cited legislation does not sustain the contention of the claimants. The power of attorney and the affidavit taken by Mr. Kellam, as above set forth, are the only documents offered by the claimants about which there is any evidence that the local law makes them official documents. It is our opinion, therefore, that the Federal Act has no application. In conjunction with the Pennsylvania Act of 1876, the reference to the prima facie standing of "matters therein set forth" refers solely to the matters

set forth by the notary, and not to those of the affiants. There is no evidence that the notary had any authority to certify more than the fact of execution by the affiants. We cite the language of Judge Shanaman in Scott v. Penn Title Insurance Company, 49 Berks 36, 39:

"The essence of the notarial certificate is that the document has been executed, and that the notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution."

This is consistent with 66 C.J.S. Notaries—§6 b page 614:

"AUTHENTICATION. A notary, by setting the marks of his official sanction on certain kinds of documents, gives them the force of evidence and perpetuates as evidence the facts authenticated therein. A notary's certificate is prima facie evidence of such matters only as the notary is authorized by law to certify, and generally it is prima facie evidence of those facts only as to which the notary would be competent to testify. The probative force of notarial acts does not apply to descriptive averments contained in such acts."

Claimants seek to give the status of judicial findings to the affidavits. Not only would this deprive our courts of the opportunity of seeing and hearing the witnesses, which is so essential to the finder of fact, but would further deprive the finder of fact of the opportunity of judging the credibility of the witnesses and the determination of whether the evidence is incompetent, irrelevant or immaterial and, for any one or more of such reasons, rejecting the evidence. Even had the evidence been taken by letters rogatory and produced at the trial, it still might have been subject to rejection by the court: Hall's Estate, 2 D. & C. 802. Finally, to accept the documents in evidence would deprive the other parties to the litigation of the opportunity to

confront the witnesses and to cross examine them, a most precious constitutional right: Garrett's Estate, supra.

The circumstances of the preparation and execution of this power of attorney and affidavits as testified to by Mr. Kellam, the American Consul, are to say the least most untrustworthy. The preparation of the material by Inkollegia is the work of an agent of a Russian governmental system which stops at nothing by way of deceit, forgery or other misrepresentation to acquire American dollars. It also exhibits the greatest opportunity for impersonation by the claimants, who may or may not have been coerced into their action by their Communist masters. In Garrett's Estate, supra, the court was faced with the possibility of being victimized by the well-known evil devices of the Hitler government. We are satisfied that the lesson to be derived from that case is salutary, since the devious practices of the Soviet government and its representatives are no doubt much more advanced than were those of the Hitler government in Germany. This places upon us the stern responsibility of scrutinizing every bit of testimony and every act most meticulously. The present case certainly shows a situation against which reasonable objection to the proffered testimony can be suggested. As stated in one of the English cases cited by Justice Linn in Garrett's Estate, supra: " '. . . it is by no means an improbable supposition that he [claimant] may be some person unconnected with the family, who having heard of this property, has come forward alleging himself to be the heir of the devisee. Justice requires that he should appear at the trial in order that his identity may be tested.' " That is exactly our situation.

Was decedent survived by heirs? Certain pertinent factors enter into the determination of this question.

The period of time since the existence of the widow and the son is admitted, October, 1940, to the date of death, 1950, is 10 years. The Iron Curtain prevents proof, which no doubt exists, from being brought forward by any party in interest to help us. It is also pertinent that the fund before us consists of United States Veterans benefits. Since there is no direct evidence to guide us, we have the alternative of applying either the presumption of the death of the known heirs before decedent, or of their survival, or rejecting both presumptions.

We sustain the conclusion of the auditing judge that the continuance in life of the widow and the son was not rebutted and, therefore, that they should not be declared legally dead. There is no proof of any search having been made for them, much less is there any evidence that they were absent from their known abode in Russia for the statutory period: Maley, Exrx. Co., v. Penna. R. R. Co., 258 Pa. 73. Likewise, there is no evidence that they were at any time exposed to a particular or imminent peril; mere general peril is not sufficient: Ryan v. Prudential Ins. Co. of America, 135 Pa. Superior Ct. 166; Ruben Estate, 87 D. & C. 78.

There is a sufficiently broad factual basis in the light of common experience from which a finding could readily be made that decedent was probably survived by heirs and, therefore, that the presumption of survival of the wife and of the son should be applied. However, the peculiar facts of this case deter us from so doing because the moment a finding is made that heirs survived, the claim of the United States must be dismissed. This result would be unfair to the Government. We, therefore, sustain the action of the auditing judge in refraining from applying the presumption of survival. We are unanimously of opinion that any award of the funds before us should be based upon evidence,

not merely upon a presumption. As the auditing judge stated, the case is in a condition of stalemate, and we are of opinion that the interests of justice do not demand an immediate decision.

The auditing judge was in error in awarding the fund back to the administrator for further accounting: Girard Trust Company, Trustee—Commonwealth Appeal, 387 Pa. 223. The Commonwealth and not the administrator is the only proper custodian of the fund.

The Act of April 9, 1929, P. L. 343, sec. 1314, being The Fiscal Code, provides two situations under either of which funds may be awarded into the State Treasury, through the Department of Revenue, without escheat, the first being then ". . . there shall . . . remain in [the] possession [of any fiduciary] any moneys not awarded to any claimant or claimants," and the other situation is when ". . . any moneys which shall have been awarded to any claimant or claimants the whereabouts whereof or that of their legal representatives the fiduciary has been unable to ascertain, . . ." the court may order the payment of such moneys into the State Treasury. This act is a custodial one the same as the so-called Iron Curtain Act of July 28, 1953. We apply the first part of the Act of 1929, supra, and hold that since the fiduciary has moneys which are not awarded to any claimant or claimants, the fund shall be transferred to the State Treasury, through the Department of Revenue, without escheat. Since the case involves possible heirs living in Russia, there must be an added qualification, viz., that if any heirs of decedent succeed in establishing their identity, they must prove before they are entitled to receive the fund that they will receive the use, benefit, control and enjoyment of it as provided in the Act of July 28, 1953.

The claim of counsel for the Russian claimants for fees and costs in the amount of $9,171.95 was properly

dismissed because of the failure of their clients to establish their identity.

All exceptions are dismissed without prejudice, except that of the Commonwealth, whose exception is sustained. The administrator is directed to transfer the fund to the State Treasury of Pennsylvania through the Department of Revenue as above directed.