Bokey Estate.

Argued June 6, 1963.  Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph T. McDonald,* with him *Thomas J. Foley,
Sr.,* and *Rosser, McDonald, Marcus & Foley,* for appel-
lant.

*James Francis Lawler,* with him *John Dano,* and
*Ostroff, Lawler & Baker,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, Octo-
ber 9, 1963:

Hilary Bokey (decedent), a resident of Lackawan-
na County, died January 22, 1960, intestate, survived
by neither wife nor children.  Sebastian Boki (Boki),
administrator of decedent's estate, filed his first and
final account in the Orphans' Court of Lackawanna
County and, at the audit of that account, the court
awarded the balance of the estate to Boki as decedent's
first cousin.  Exceptions to that award were filed by
a consular representative of the USSR on behalf of
Soviet nationals claiming to be sisters of decedent.
These exceptions alleged that the court erred in find-
ing that Boki was decedent's first cousin and in not
requiring him to prove the non-existence of other heirs.

After several hearings, the court appointed a mas-
ter to investigate into the facts of the alleged kinship

of the several claimants to the decedent.[1]   After several hearings and personal investigation, the master filed a report in which, inter alia, he concluded that Boki was a first cousin and that decedent had two sisters still alive in Russia,[2] but that neither Boki nor the sisters had met the burden of proof necessary to establish their respective claims.   In view of his conclusion that the claimants had not proven their claims, the master recommended that the balance of the estate be transferred to the Commonwealth without escheat either under the 1929 Act[3] or the 1953 Act.[4] Acting upon this recommendation, the court entered a decree which sustained the exceptions to its original decree of distribution and directed Boki, as administrator, to transfer the balance of the estate to the Commonwealth without escheat *either under the 1929 Act or the 1953 Act.*   From that decree Boki appeals.[5]

This controversy resolves itself into very narrow issues: (1) have *any* of the claimants, by evidence sufficient in quantity and quality, proven a right to dis-

---

[1] Orphans' Court Act of August 10, 1951, P. L. 1163, §601.

[2] The master stated that, since Boki and his witnesses testified that he was a first cousin, and, since such testimony was uncontradicted, "it must be taken that he is a first cousin". Likewise, since the evidence as to the present existence of the two sisters in Russia was not contradicted, he assumed they were still living.

[3] Act of April 9, 1929, P. L. 343, §1314, 72 PS §1314.

[4] Act of July 28, 1953, P. L. 674, §2, 20 PS §1156.

[5] The sisters' counsel questions the right of administrator's counsel to file this appeal on Boki's behalf. *As administrator*, Boki has no standing to take this appeal from a decree which involves a question of distribution: *Elliott Estate*, 388 Pa. 321, 131 A. 2d 357; *Reese's Estate*, 317 Pa. 473, 177 A. 792. However, we shall treat this appeal as though taken by Boki in his individual capacity and consider that Boki's counsel represents him as an individual: *Deakyne Estate*, 166 Pa. Superior Ct. 527, 72 A. 2d 616.

tribution of this estate, in whole or in part? (2) if none of the claimants have proven such right, should the balance of this estate be awarded to the Commonwealth without escheat, and, if so, under what statute?

Certain facts appear to be undisputed and established: (1) decedent was born in Prodwin, Bobruisk, Russia, his parents being Albin Bokey and Mary Kharkievich Bokey; (2) he had three sisters, Adelia, Agata and Flora, and one brother, Sylvester; (3) Boki had two brothers, Ignatz and Alexander, and a sister, Ursula; (4) Boki and decedent came to the United States in 1913 and settled in Scranton; (5) decedent's parents, his brother and his sister, Adelia, predeceased him.

At first blush, an examination of the master's report and the court's opinion would indicate that their factual findings are inconsistent and at variance with their ultimate conclusion, i.e., that the claimants had failed to prove a right to take in this estate. Both the master and the court *found* that Boki was decedent's first cousin and that decedent's two sisters, Flora (Fleriana Vasilevskaya) and Agata (Agata Ivakova), were still alive in Russia and yet both the master and the court *concluded* that none of the claimants—Boki as well as the alleged sisters—had "establish[ed] their relationship to the decedent by a fair preponderance of trustworthy and satisfying evidence". However, on more careful examination of the report and the opinion, such so-called findings and conclusions can readily be reconciled. It is obvious that what the master and the court meant by their so-called "findings" was that each claimant had presented *some* evidence of kinship to the decedent which was not contradicted of record and which tended to establish such kinship but such evidence, both qualitatively and quantitatively, fell short of the standard of proof required to sus-

tain each claimant's burden.[6] Under the circumstances, in no sense can the so-called "findings" of the master and the court be considered "findings of fact" in the sense that such a term is generally employed and understood.

A true "finding of fact" must be based upon evidence which is not only credible and sufficient but also of such quality that it satisfies that standard of proof which the law requires be met under the circumstances; in the case at bar, the court expressly negatived the existence of such evidence as would support a true "finding of fact". Ordinarily,[7] findings of fact by the court below, approved by the court en banc, are binding upon us if buttressed by evidence sufficient to support them. In the case at bar, such rule is clearly inapplicable because that which counsel terms "findings of fact" are not such in reality.

No useful purpose can be served by a detailed recitation of the testimony produced both on behalf of Boki and the two sisters because, in our opinion, such testimony falls far short of the quantity and quality of the proof required to establish such claims. Each claimant had the burden of proving kinship to the decedent "by a fair preponderance of the credible evidence" (*Davis Estate,* 365 Pa. 605, 76 A. 2d 643; *Link's Estate,* 319 Pa. 513, 180 A. 1). In *Link's Estate,* supra, (pp. 519, 520), the Court said: ". . . kinship which carries with it a claim of property against the claim of the State should be proved by something more than a guess, it should be built on a sound basis" and, further, (pp. 522, 523): "To defeat the claim of the Com-

---

[6] The court said, in effect, that there had to be a "preponderance" of evidence which was *trustworthy,* i.e., credible, and *satisfactory,* i.e., requisite to meet the required standard of proof, and that such evidence was lacking.

[7] The exceptions to this rule are set forth in *Olaughton v. Bear Stearns & Co.,* 397 Pa. 480, 488, 156 A. 2d 314.

monwealth the evidence must be so *clear, precise and definite* in quality and quantity as to satisfy the court below that the relationship claimed existed." (Emphasis supplied)

It was encumbent upon Boki to prove (1) that he was a first cousin, (2) at the time of his death, decedent was survived by neither brothers, sisters or their issue and (3) that, except for Boki, decedent was survived by neither uncles, aunts, their children or grandchildren: Intestate Act of April 24, 1947, P. L. 80, §3 (2), (3), (5), as amended, 20 PS §1.3. In proof of (1), supra, we have only Boki's statement as to kinship and the testimony of three witnesses—one Boki's wife and another the mother-in-law of a son of Boki—who stated that they had heard on an occasion decedent refer to Boki as his cousin;[8] in proof of (2), supra, the testimony affirms the onetime existence of the two sisters but neither affirms nor denies the present existence of such sisters; in proof of (3), supra, Boki's testimony completely fails to show that his brother, Alexander, and his sister, Ursula, are not now living. It is clear beyond any question that Boki's testimony failed to negative in any manner the *present* existence of his own two relatives or decedent's sisters.

In support of the claims of the two sisters all the evidence is documentary and falls into two categories: (a) documents which purport to be copies[9] of Russian public records such as birth, death and marriage certificates and (b) documents which purport to show that the two sisters are still alive. In the first category are birth certificates of decedent's two sisters and a brother, death certificates of decedent's parents, his sister, Adelia, and his brother, Sylvester, and the mar-

---

[8] Cf: the records of the hospital and social security wherein Boki claims to be decedent's brother.

[9] Boki claims these are not "copies" but "reconstructed" documents.

riage certificates of decedent's parents and sisters, Agata and Flora. Assuming, arguendo, the admissibility of these certificates, they simply go to proof of facts which are presently undisputed. In the second category are three documents, a power of attorney purporting to be executed by the sister Flora, a so-called "survival" certificate purporting to be executed by the sister Flora and a letter purporting to have been written by the sister Flora after decedent's death and after the institution of these proceedings.

The power of attorney and the "survival" certificate we will assume were properly executed before an appropriate Russian official and authenticated by the American consul in Moscow. Counsel for the sister urge the admissibility of these documents to prove the present existence of the person who executed both documents, i.e., the sister Flora; in so doing reliance is placed on the Act of Congress of June 25, 1948, Ch. 646, 62 Stat. 947, as amended, 28 U.S.C.A. §1741 and the Pennsylvania Acts of April 27, 1876, P. L. 49, §1, 28 PS §223 and of July 24, 1941, P. L. 490, §9, as amended, 21 PS §291.9(3). The Act of 1948, supra, deals with *copies* of foreign documents of record or on file in a public office of a foreign country and is entirely inapplicable to the instant documents which are not and do not purport to be *copies* of any such records. The Act of 1876, supra, provides that the official acts and exemplifications of foreign notaries in accordance with the laws of their respective countries, authenticated by the local American consul, "shall be prima facie evidence of the matters therein set forth"; applied to the instant factual situation such Act would command the recognition of the power of attorney and the "survival" certificates only to the extent that they set forth that *a person purporting to be the sister Flora* appeared before the appropriate officials and executed the documents but in nowise compels recognition that

*such person was in fact the sister Flora.* The same result follows under the Act of 1941, supra. In *Martinzik Estate,* 25 Pa. D. & C. 2d 701, 709, 710, Judge BOLGER of the Orphans' Court of Philadelphia County, dealing with a similar situation, stated: "In conjunction with the Pennsylvania Act of 1876, the reference to the prima facie standing of 'matters therein set forth' refers solely to the matters set forth by the notary, and not to those of the affiants. There is no evidence that the notary had any authority to certify more than the fact of execution by the affiants. We cite the language of Judge SHANAMAN in Scott v. Penn Title Insurance Company, 49 Berks 35, 39: 'The essence of the notarial certificate is that the document has been executed, and that the notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution'." In the case at bar, while the power of attorney and the "survival" certificate were admissible, their admissibility was limited to show that a person purporting to be the sister Flora appeared and executed the instant documents but not to prove that the affiant was in fact the sister Flora or to show the present existence of the sister Flora.

The letter written by a person purporting to be the sister Flora to a representative of counsel of record for the two sisters recites that Boki is not a relative, that Agata and Flora are alive, that Agata is mentally ill and that Sylvester and Adelia predeceased decedent. There is nothing to prove that the writer of the letter is in fact the sister of decedent and it is obviously a self-serving, ex parte statement which is clearly inadmissible in evidence. The right of confrontation of witnesses is most important in our jurisprudence; it affords the opposite party the opportunity to test by cross-examination the reliability of the evidence given and enables the court, through its opportunity to see and observe the witness, to better test the credi-

bility of the witness. The court below should have given no consideration whatsoever to the contents of this letter for, by its very nature, it could not be received into evidence nor made the basis for any findings.

Without the contents of the letter and except for any implication arising from the execution of the power of attorney and the statement in the "survival" certificate there is no evidence of record that the two sisters of decedent are still alive. Their continued existence may be a fact but it has not been proven by evidence cognizable in a court of law.

We are convinced from an examination of this record that neither the claim of Boki or of the two sisters has been established with proof of the character required in this class of cases; accordingly, the court below correctly and properly awarded the balance of this estate to the Commonwealth without escheat.

However, the court below did err in awarding the balance of the estate to the Commonwealth either under the 1953 Act or the 1929 Act. The legislative intendment in the 1953 statute is clear; authority was thereby conferred upon a court to withhold the distribution of property to persons behind the Iron Curtain where the court is convinced that the "beneficiary would not have the actual benefit, use, enjoyment or control of the . . . property distributed." To bring into play the 1953 Act two conditions must be established; (1) the identity of the person or persons entitled to distribution and (2) a conviction on the part of the court that, if the property is distributed, such person or persons will not receive the actual benefit, use, enjoyment or control of the property. In the instant case, neither condition was established and the balance of the estate could not and should not have been awarded under the provisions of this statute.

The Act of 1929 applies (a) where moneys have not been awarded, i.e., where there is a possibility of heirs but their identities have not been established, or (b) where moneys have been awarded but the whereabouts of the heirs are unknown, i.e., where the identities of the heirs but not their whereabouts have been established. In our view, neither Boki nor the two sisters have established their claims to the balance of this estate, hence, no award of the moneys can be made and the 1929 Act is clearly applicable.

It may well be that in the future Boki or the two sisters will be able by appropriate evidence to establish their claims against this estate. As this Court said (p. 516) in *Link's Estate (No. 1)*, supra: "Payment of unclaimed moneys by a fiduciary under the [Act of 1929] preserves to anyone legally entitled thereto the right to subsequently prove his claim as provided in the act. . . . it does not take away the right of a lawful claimant to assert a claim subsequently." Until the time comes when a lawful claim is properly presented it is appropriate that the Commonwealth act as custodian of the balance of this estate.

Decree reversed. Record remanded to the court below so that an appropriate decree can be entered awarding the balance in this estate to the Commonwealth without escheat under the provisions of the 1929 Act. Costs to be paid by the estate.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

I would vacate this decree and remand. The court below should resolve the issues as to the sisters' claim now. The appellant has clearly failed to sustain his position as heir and he should not by this Court's action be given another opportunity to do so.