## Slotkin Estate

*Ostroff & Lawler*, for exceptants.

*Paul A. Liebman*, for accountant.

*Herbert W. Salus, Jr.*, Assistant Attorney General, for Commonwealth.

*A. Theodore Flum*, trustee ad litem.

### ADJUDICATION

LEFEVER, J., April 22, 1965. — Harry Slotkin died intestate on November 1, 1944. Letters of administration were granted to Morris Denkin on November 14, 1944.

Decedent was not survived by a spouse or issue. However, it appears from the report and the supplemental report filed by the accountant, pursuant to this court's rule 69, that decedent was survived by Hava Solotkin, mother; Leba Solotkin, Elya Solotkin,* Avremil Solotkin, Zelik Solotkin, Hyka Solotkin, Sarah Krok and Nechameh Solotkin, brothers and sisters; Moishe Matusov Solotkin, uncle; and Shimme Matusov Duborski and Hene (Solotkin), aunts, who were residing in the Union of Soviet Socialist Republics; and by Sara Slotkin Denkin, aunt; Mendel Denkin, uncle; and Morris Denkin, Sadie Gratman, Anna Denkin,

---

*Spelling contained in said report submitted under Rule 69. The variation in spelling of names of various parties was neither explained nor at issue at any hearing.

Jack Denkin, Helen Denkin and Sadie Slotkin Woldorf, cousins, who were living in the United States. The reports stated that between 1944 and 1950, Morris Denkin and Sarah Denkin received letters from some of the aforesaid relatives in Russia, but that since February, 1950, no communication has been received from any of them, either voluntarily or in response to communications addressed to them.

Decedent's estate consisted of personalty and 17 pieces of real estate located in slum areas of Philadelphia, which were being vandalized and were rapidly depreciating in value. Upon petition of the accountant, the court, by decree dated March 20, 1959, appointed A. Theodore Flum, Esq., "trustee ad litem for all persons entitled to share in decedent's estate, whose identity and whereabouts are unknown and who are citizens of the Union of Soviet Socialist Republics".

Following many conferences with counsel and the trustee ad litem in chambers, and several hearings in court, the auditing judge, under date of May 2, 1962, filed an adjudication sur "First Account of Morris Denkin, Administrator", and an adjudication sur "First and Partial Account of Morris Denkin, trustee, pursuant to Stipulation", and sur his supplemental account, covering the period from May 1, 1960 to January 29, 1962, which was erroneously denominated "Second and Final Account of Morris Denkin, Trustee pursuant to Stipulation". Therein, the auditing judge: (1) awarded the balance of personalty and the balance of proceeds of real estate theretofore and thereafter received "to be paid into the state treasury, without escheat, pursuant to the provisions of section 1314 of The Fiscal Code of April 9, 1929, P. L. 343"; and (2) directed that "the said Morris Denkin is appointed Trustee to forthwith proceed, acting with the aid and cooperation of counsel of record, and also the trustee ad litem so appointed by the Court, to dispose of the

seventeen parcels of real estate of the decedent, at private or public sale, and appropriate petition or petitions will hereafter be submitted to the Court".

The accountant thereafter sold the properties at public sale. The court then entered a decree dated March 3, 1964, approving this sale and directing that "the proceeds of sale shall be duly accounted for and be subject to the provisions of the said decree of May 2, 1962, no security to be entered by said Morris Denkin, in view of the order to block the proceeds in restricted accounts and have checks paid directly to the institutions wherein are the restricted accounts". The present account has been filed pursuant to the aforesaid decree.

At the audit of the pending account, requests were made for additional compensation: (a) by the executors of the estate of Morris Denkin, who died subsequent to the filing of this account; (b) by the attorneys for the accountant; and (c) by the trustee ad litem. Evidence was presented as to the services rendered.

At the audit, James Francis Lawler, Esq., appeared on behalf of Sarra Wulfovna Krok, Abram Wulfovich Solodkin and Ilya Wulfovich Solodkin, claimants. Mr. Lawler: (1) offered evidence to show that his clients were brothers and sister of decedent who lived in Russia; (2) requested the auditing judge to direct the Commonwealth to immediately return the funds awarded to the Commonwealth under section 1314 of The Fiscal Code of April 9, 1929, P. L. 343; (3) requested the court to order immediate distribution to claimants and the other brothers and sisters in Russia of the entire proceeds of personalty and realty in one lump sum; (4) objected to practically every adjudication, order and decree entered by this court in this estate from 1944 to date, including the appointment of the trustee ad litem, the approval of the sale of the real estate, the failure to surcharge accountant Morris

Denkin, the award of personalty and proceeds of realty to the Commonwealth under section 1314 of The Fiscal Code; (5) objected to the alleged gross misconduct of the accountant, his attorneys and the trustee ad litem; and (6) objected to the allowance of any additional compensation to the accountant's estate, to the attorneys for the accountant, and to the trustee ad litem.

In support of the claim of his clients, Mr. Lawler offered into evidence: (a) powers of attorney from them, executed, sworn and acknowledged before a Russian notary public and bearing the United States Consul's certification as to the status and authority of the Russian notary public (exhibits C-2, C-3 and C-4); (b) certificates by notaries that three of the alleged heirs, two of whom he claims to represent, appeared before the notary (exhibits C-6, C-7, C-7A); (c) an unidentified photograph alleged to be a photograph of decedent sent to him by his clients (exhibit C-5); (d) a telegram by the correspondent Russian attorneys' organization, Interkollegia, to Mr. Lawler and a letter purporting to be written by three of the alleged Russian heirs, not represented by him, to Morris Denkin (exhibits C-1 and C-11); (e) purported birth certificates of several of the alleged heirs, including one allegedly represented by him, which certificates were issued post litem motam (exhibits C-8A, 8B, 8C and 9); (f) purportedly contemporaneous certificates of the marriage and death of two of the alleged heirs, other than his clients, on dates subsequent to decedent's death (exhibits C-10A, C-10B); and (g) a family tree prepared by Mr. Lawler from his exhibits (C-12). Exhibits C-1, C-11, and C-6, 7 and 7A, were excluded at the audit as hearsay.

"Survival certificates", such as exhibits C-6, C-7 and C-7A, and a letter, like the telegram and letter, exhibits C-1 and C-11, were excluded in Bokey Estate, 412 Pa. 244. No supporting evidence or foundation has

been laid for the admission of the photograph, exhibit C-5.

Even if acknowledged before a Russian notary public whose authority is certified by the United States Consul, sworn powers of attorney and affidavits by purported Russian heirs of a Philadelphia decedent are not admissible in evidence to prove either the identity or survivorship of said heirs: Bokey Estate, supra; Sobko Estate, 88 D. & C. 76; Martinzik Estate, 25 D. & C. 2d 701; Sochanczak Estate, 29 D. & C. 2d 609; Prusak Estate, 29 D. & C. 2d 329; and Malika Estate, 31 D. & C. 2d 736, 14 Fiduc. Rep. 35.

The reasons for their exclusion are:

1. Under the Act of April 27, 1876, P. L. 49, sec. 1, 28 PS §223, and the Act of July 24, 1941, P. L. 490, sec. 9, as amended by the Act of June 21, 1947, P. L. 855, 21 PS §291.9(3), which give prima facie effect to the official acts and exemplifications of foreign notaries, when authenticated by the local American consul, the notarial certificate on the disputed powers of attorney and other affidavits does not constitute prima facie evidence of the truth of the matters stated in the powers of attorney and the affidavits by the purported Russian heirs signing them. It merely constitutes prima facie evidence that persons who designated themselves by the names stated therein appeared and executed and acknowledged said documents before the notary public: Bokey Estate, supra; Sobko Estate, supra; Martinzik Estate, supra; Prusak Estate, supra; Malika Estate, supra.

2. Such powers of attorney and affidavits do not establish the circumstances under which they were obtained, viz., whether they were obtained without fraud or duress: Sobko Estate, supra. Moreover, Wolf, Popper, Ross, Wolf and Jones, the New York law firm for which Lawler is acting, is the correspondent for the Russian lawyers' organization, Interkollegia,

which customarily represents Russian claimants to American estates. Interkollegia is dominated by the Russian Government. Furthermore, there is little basis for placing faith and confidence in the Russian Government. It follows that the possibilities of fraud, impersonation and coercion in the preparation and presentation of the claims, powers of attorney, affidavits and other supporting documents are unbounded: Sobko Estate, supra, at pages 77 and 79; Sochanczak Estate, supra, at pages 619-20; Prusak Estate, supra, at page 335.

3. A person who claims as heir to an intestate estate in this Commonwealth is required to appear before the Pennsylvania court in person to establish his claim. A contrary rule would deprive other claimants of the right of confrontation and crossexamination and would deprive the court of the opportunity of seeing and hearing the witnesses and judging their credibility: Garrett's Estate, 335 Pa. 287; Martinzik Estate, supra, pages 710-11; and Sochanczak Estate, supra, pages 615-18.

4. Birth, death and marriage certificates issued years after the event in question and decedent's death are inadmissible because: (a) their issuance was not reasonably contemporaneous with the events recorded; (b) they were issued post litem motam; (c) the Russian Government is not sufficiently trustworthy to entitle even its contemporaneous official records to creditability: Malika Estate, supra; and (d) the Uniform Business Records Act of May 4, 1939, P. L. 42, sec. 2, makes contemporaneous documents prepared in the regular course of business admissible only ". . . *if, in the opinion of the court, the sources of information,* method and time of preparation *were such as to justify* its *admission*". (Italics added.) The disputed vital statistic documents do not meet this test.

It is apparent from the foregoing that the proofs

with respect to the relationship of Sarra Wulfovna Krok, Abram Wulfovich Solodkin and Elya Wulfovich Solodkin are most sketchy. They are not suffiicent to warrant the auditing judge in concluding that they are sisters and brothers of decedent. They do not rise to the standard set in the cited cases.

More important, however, even assuming, arguendo, that Sarra Wulfovna Krok, Abram Wulfovich Solodkin and Elya Wulfovich Solodkin were the sisters and brother of decedent, their claim to this estate is not established. Both the reports of the accountant filed pursuant to rule 69 of this court and the report of the trustee ad litem strongly indicate that Hava Solotkin, mother of decedent, survived him. No proofs of any kind have been presented that she predeceased decedent. Whether or not she is *now alive* is not known. However, there is no doubt that under the intestate law of Pennsylvania, if the mother of an intestate decedent survived him, even for a few minutes, she or her estate takes decedent's entire estate to the exclusion of decedent's brothers and sisters or more remote relatives. The record indicates that decedent's mother was only 65 years of age at the time of his death. This is not an advanced age, even in Russia. The burden of proof was upon claimants to show that decedent's mother predeceased him. Moreover, there has been no proof of any kind offered that decedent's father predeceased him. Here again, the burden was on claimants.

It is noteworthy that 21 years have elapsed since decedent's death. This is long enough to enable claimants to prove their identity and, more essential, to prove that decedent's mother and father predeceased him, if that were the fact. The auditing judge finds as a matter of fact and conclusion of law that claimants have not proved: (1) that they are the heirs-at-law and next of kin of decedent, or (2) that decedent's mother is actually deceased or presumptively, in law,

deceased at a time subsequent to the death of decedent so that they are the heirs-at-law and next of kin of the mother of decedent.

Since Mr. Lawler has failed to prove that he represents the intestate heirs, he has no standing to contest the court's jurisdiction to supervise the administration of decedent's real estate or to otherwise object to the disposition of decedent's estate: Prusak Estate, supra.

In any event, this court has jurisdiction to supervise the administration and disposition of decedent's real estate in the case at bar. Under section 501 of the Fiduciaries Act of April 18, 1949, P. L. 512, as amended, the personal representative has been expressly granted the power to manage realty and account for rent therefrom in this court in all decedents' estates, except those where the real estate is occupied by an heir or devisee.

Although section 105 specified that articles I through VII of the Fiduciaries Act of 1949 are generally inapplicable to estates of decedents dying before January 1, 1950, section 501 may be properly taken into consideration when, in an exceptional case such as this, the question is whether or not this court has the inherent power to make orders and decrees with respect to the management and disposition of real estate in order to protect against loss the unidentified heirs and the Commonwealth, both as tax creditor and as heir. Moreover, under the Fiduciaries Act of June 7, 1917, P. L. 447, this court had jurisdiction over the real estate in "exceptional" cases: Hoffman's Appeal, 185 Pa. 315, 317; Gaston's Estate, 61 D. & C. 126. In the latter case, the court stated, at page 127:

"It is well established in Pennsylvania that generally the administration of real estate is not to be included in an administrator's account: Appeals of Fross et al. and Loomis et al., 105 Pa. 258. But as stated in Hoffman's Appeal, 185 Pa. 315, 317, citing Appeals of Fross and Loomis, supra, 'It does not follow that

there are no cases in which the facts are such as to make them an exception to the rule laid down.' We believe this is the exceptional case".

That the case at bar is an "exceptional case" is clear. Here, the facts indicated the likelihood that Russian heirs survived decedent. Despite careful search, those heirs were not ascertainable. Decedent's real estate was deteriorating and rapidly declining in value. Action was necessary to preserve it from dilapidation and foreclosure for nonpayment of taxes. Furthermore, procedure was necessary to rent and maintain the real estate. These facts warranted this court in taking jurisdiction.

Following a conference in chambers among all counsel during the audit held on January 6, 1965, it was agreed by the parties in interest that the claims for additional compensation should be allowed as follows: $2,000 to the estate of the deceased accountant; $3,500 to the attorneys for the accountant; and $2,500 to the trustee ad litem. Mr. Lawler objected to the allowance of any additional compensation, but, as noted above, he and his clients have no standing to object. The auditing judge finds that the foregoing additional compensation is fair and reasonable for the unusual and extraordinary services rendered. Accordingly, it is allowed.

At the conclusion of the audit on March 3, 1965, Mr. Lawler rested his case for claimants. He made no application for further hearing. Notwithstanding this, at the regular motion list of this court on March 12, 1965, he presented a "Petition for citation upon the Attorney-General and the Administrators to show cause why petitioner should not be allowed to use the procedural devices of depositions or file interrogatories, commissions, and/or letters rogatory". This petition is fatally defective, in that: (1) it fails to allege that any matter is pending in this court in which any evidence obtained thereby could be admissible; (2) the

petition was signed by petitioners' attorneys without adequate explanation or reason and without any showing of authority from petitioners to the attorneys to file this petition; and (3) it is fatally defective in other respects: see opinion of this court in Zaremba Estate, 34 D. & C. 2d 721. The petition, therefore, is dismissed, without prejudice to petitioners to file a petition conforming to the rules of this court, should the circumstances warrant.

And now, to wit, April 22, 1965, the account is confirmed nisi. . . .

OPINION SUR EXCEPTIONS TO ADJUDICATION

BOLGER, J., June 11, 1965. — Very few cases disposed of in this court have presented as many vexatious problems, including the circumstances of the case as well as counsel, as the current estate. For many years, the learned auditing judge has patiently and indulgently aided to the extent of serving as a nursemaid beyond the call of duty in the liquidation of the slum dwellings left by testator, in the location of possible heirs as well as the adjudication of the account, allowance of counsel fees for extraordinary services of the accountant, now deceased, his counsel and of the trustee ad litem. The appointment of the trustee ad litem was salutary and effective.

We must affirm the findings of fact and the allowance of fees because they are supported by the record, and since no caprice or arbitrariness is manifest, they are tantamount to the verdict of a jury: Kaufmann's Estate, 281 Pa. 519; Houston's Estate, 318 Pa. 300.

The refusal of the auditing judge to find that claimants are not the persons entitled, and that counsel purporting to represent them have therefore no standing, is manifest. The authorities cited amply support this conclusion and the awards based thereon. Especially is the finding that claimants failed to establish their

identities as heirs properly based upon the evidence that decedent was survived by his mother and possibly by his father, whose death have not been established nor their whereabouts proved. The presumption of the existence of one or both of them is applicable, since no evidence was produced to rebut it: Martinzik Estate, 25 D. & C. 2d 701.

The belated petition for letters rogatory and for taking testimony by deposition was properly dismissed without prejudice for the reasons and upon the authorities well stated by the auditing judge.

The exceptions are dismissed, and the adjudication is confirmed absolutely.