## Kulchinsky Estate

Before Klein, P.J., Bolger, Lefever, Saylor, Shoyer, and Burke, JJ.

*Samuel Packman,* for accountants.

*James Francis Lawler,* for exceptants.

*David B. Zoob,* contra.

*Melvin E. Soll,* for Commonwealth.

BURKE, J., January 7, 1966.—Testatrix died April 22, 1963, leaving a will dated November 30, 1961. The learned auditing judge, in his adjudication, awarded the balance of the estate back to the accountants (named trustees) for further accounting.

Exceptions were filed by both the Commonwealth and the primary legatees to (1) an award of the balance to the trustees rather than to the Commonwealth under the so-called "Iron Curtain Act" of July 28, 1953, P. L. 674, 20 PS §§1155-59, and solely by the primary legatees to (2) the failure of the auditing judge to conclude that the conditional gift to a charity is invalid.

After gifts of personal articles, testatrix gave the residue, one fourth to each of her two sisters, Genne Klebanoff Lipkin, a resident of the Union of Soviet Socialist Republics (U. S. S. R.), living in Moscow, U. S. S. R., and Gittel Klebanoff, whose last known address is Borostow, Minsk, U. S. S. R.; to her brother Beryl Klebanoff, also known as Boris Klebanoff, last known to live in Moscow, U. S. S. R., one fourth; and the remaining one fourth to the daughter and two sons

of her deceased brother, Mayor Klebanoff, last known to reside in Leningrad, U. S. S. R. Provision was then made for the predecease of the indicated beneficiaries with substitutionary gifts to nephews and nieces.

The pertinent provision of the will is as follows:

"SEVENTH: I am fully aware of the legal restrictions that now prevail in the payment of legacies to residents of countries behind the 'iron Curtain,' in this istance [sic] U. S. S. R.., then I direct that in the event that restriction shall still exist at my decease and it shall not be possible for my above-mentioned legatees, either my sisters and brother or their children, to receive payment, then my hereinmentioned trustees shall pay all expenses of administering the estate, and the balance remaining shall be held by them in trust for a period of ten (10) years from the date of my passing. Shall the restrictions on payment be lifted or eliminated within said period of ten (10) years, and it shall become possible to make payment to my said legatees and for them to receive payment, then I direct that such legacies be paid as provided in this, my Will. But should the restrictions still prevail, then I direct that at the expiration of the ten (10) year period my Trustees shall turn over the rest, residue and remainder [sic] of my estate unto the Hebrew University in Jerusalem, Israel, for the purpose of establishing a fund for scjolarship [sic] or scholarships to be known as the William and Anna Kulchinsky Scholarship Fund. Said fund to be invested and the proceeds from said fund to be used for aiding orphan students, either without one parent or without any"

After designating the trustees, the will clothed them with broad powers, including (a) authority to retain investments; (b) the power to sell with directions to deposit the proceeds in either savings banks or Federal savings and loan associations and (c) to serve as fiduciaries without the entry of security.

The learned auditing judge found as a fact that testatrix was survived by two sisters and a brother, three of the named legatees, but that the children of her deceased brother were not identified. He also refused to sanction partial payments to the identified legatees and awarded the balance back to the accountants (trustees) for further accounting.

Section 2 of the Iron Curtain Act provides:

"Whenever it shall appear to the court that if distribution were made a beneficiary would not have the actual benefit, use, enjoyment or control of the money or other property distributed to him by a fiduciary, the court shall have the power and authority to direct the fiduciary (a) to make payment of the share of such beneficiary at such times and in such manner and amounts as the court may deem proper, or (b) to withhold distribution of the share of such beneficiary, convert it to cash and pay it through the Department of Revenue into the State Treasury without escheat."

The exceptants rest on the alleged interdiction of the statute confining the court to making an award only to the Commonwealth, without escheat, under section 1314 of The Fiscal Code of April 9, 1929, P. L. 343. In support of this view, they rely on Wanson Estate, 419 Pa. 109. In Wanson, the will made no provision for the appointment of trustees to hold the residue awaiting the vacation of the restraint on payments. They argue that, as a consequence, there could be no alternative other than giving custody of the balance to the Commonwealth.

In Wanson, the court said, at page 113:

"The Act does not establish a proscriptive rule outlawing distribution to foreign legatees. Instead, it authorizes the court, on an ad hoc basis, to determine the time and manner of distribution or, in the alternative, *to direct a protective, custodial, interest-bearing deposit until the money can safely and feasibly be placed*

*in the beneficiary's hands.* See Bokey Estate, 412 Pa. 244, . . . ." (Italics supplied).

The court also said, in footnote 4, page 113:

"The provisions of the "Iron Curtain Act" sanction a transfer of funds, *creating thereby a situation analogous to the relationship between a guardian and his ward. Rather than prohibitory, the Act is protective, having concern always for the best interests of the legatee.*" (Italics supplied).

Can it be said that the interests of the primary legatees are best served by depositing the balance with the Commonwealth, earning two percent interest, when it could be deposited in a Federally insured savings institution yielding a mimimum of four percent? The dominant intent of the Iron Curtain Act is to provide security for the funds which may be distributed to beneficiaries at a later time for which testatrix made provision.

In Nikas Estate, 28 D. & C. 2d 151, 12 Fiduc. Rep. 630 (O. C. Phila., no. 3140 of 1958), the will is almost identical with the instant will. Testator gave the residue in trust, naming the trustees, to pay the income to testator's wife for a period of 10 years and after the expiration of the stated term to pay her the principal and, if she dies within the said period, then to his children. All of the beneficiaries resided in Albania. Judge Bolger awarded the balance to the accountant for deposit in Federally insured savings institutions.

Exception two is addressed to the failure of the auditing judge to conclude that the conditional gift to the charity is invalid. It is difficult to discern under what circumstances the gift would be invalid. In effect, the exceptants ask the court to ignore the ancient principle of the law of wills that a condition precedent is valid when not contrary to law, violative of public policy or impossible of fulfillment.

Exceptants argue that in the construction of wills

the law leans in favor of an outright gift rather than a contingent gift. This argument supplies its own answer, since resort cannot be made to rules of construction unless the language of the will is ambiguous: Burleigh Estate, 405 Pa. 373 (1961). This exception is devoid of merit.

It is obvious that the Iron Curtain Act fills the void when a testator fails to make provision for the custody of the legacies awaiting distribution. With the concurrence of the auditing judge, the balance is awarded to the trustees, who are herein directed to deposit the balance in Federally insured savings institutions, the amount of any initial deposit in any one institution not to exceed $7,500, and the accounts to be marked "not to be withdrawn except upon further order of the Orphans' Court," the said deposit books to be promptly exhibited to the auditing judge.

The exceptions are dismissed and the adjudication, as herein modified, is confirmed absolutely.