7 N.J. Super. 512 (1950)
71 A.2d 909
HOME LIFE INSURANCE COMPANY (A CORPORATION), PLAINTIFF,
v.
ARTHUR P. MORRIS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 8, 1950.
Mr. Norbury C. Murray, attorney for plaintiff.
Messrs. Chanalis, Lynch & Maloney (Mr. Michael N. Chanalis appearing), attorneys for defendant.
STEIN, J.S.C.
This suit is one in the nature of an equitable replevin.
*513 Defendant was a full-time employee of plaintiff under a written contract. His employment and contract were terminated as of June 30, 1949.
After notice of and before termination of his employment, defendant, without plaintiff's knowledge or consent, removed from plaintiff's files the "Planned Estate Folders for Clients" and contents, which are the subject matter of this suit.
The folders constitute the plaintiff's record of the results which defendant and other employees were hired and paid to accomplish.
The defendant, called a "Field Underwriter," like plaintiff's other employees in the same category, was hired to further plaintiff's system of doing business which it designates as "Planned Estates." The plaintiff's system of "Planned Estates" is a substantial aid to it in increasing the volume of its business. It consists of selecting as its prospects persons who have an estate or a reasonable prospect of acquiring one, and renders them service in the form of ascertaining from them in confidence their financial situation, family needs, amount and types of insurance carried, and similar facts, analyzing same and working out and recommending a long range financial plan for the client, having regard to taxes, education of children, and other factors. The plan is then submitted to the prospect for his approval. When approved it is put into effect and thereafter is automatically reviewed annually by the company to ascertain if there has been any change in the client's situation which renders a change in the plan desirable. If so, the matter is discussed with the client and the changes are made.
This service is rendered and continued without charge even though the client never takes insurance from the plaintiff. If his financial situation and family needs make the desirability of insurance or further insurance thereof apparent, the company endeavors to have such insurance placed with it. Experience over the years has shown that this service rendered without charge, results in the client immediately or eventually becoming holders of policies of plaintiff in about 33 1/3% of the cases, and that many of the remaining 66 2/3% because *514 of the good will created by the service rendered recommend plaintiff to their friends who frequently become policy-holders.
The system is carried out about as follows: The field underwriter of which the defendant was one is furnished a printed booklet outlining the service. He explains this in detail to the prospect. In the name and on behalf of plaintiff, and under a pledge of confidence by the company, he ascertains the confidential facts from the prospect and records them on a form furnished by plaintiff and gives it to the plaintiff's "Planning Department." The plaintiff's local office, in its name over the signature of its manager, acknowledges receipt to the prospect of the confidential facts. The planning department then analyzes the facts and records and works out a "Planned Estate" for the prospect. This is given to the field underwriter who discusses it with the prospect and upon its acceptance by him, the plan is returned to the planning department which then attends to the detail of putting it into effect. This frequently involves correspondence with other insurance companies in order to effect changes suggested by plaintiff's planning department.
Upon completion of the matter the original documents by which existing insurance is changed together with any new policies are delivered to the field underwriter who delivers them to the prospect who receipts for them to plaintiff.
The confidential facts, copies of documents and correspondence and receipts are kept in the folder. The folders are kept in steel cabinets as part of plaintiff's files, and are card indexed in such manner that they automatically come to the attention of plaintiff annually for the purpose of review. If a client asks for information or wishes to discuss his affairs, plaintiff having the folder can give a ready answer or discuss the matter intelligently  which it could not do if it did not have such folder. If the client moves to another district the folder relating to him is sent to the plaintiff's office in that district and the follow-up system is continued by that office.
*515 In May or June, 1948, plaintiff's Home Office issued orders nation-wide to its offices that all folders were to be stamped with a statement that they were the property of the plaintiff which instructions were made known to defendant and other field underwriters attached to its Newark office, at a weekly meeting by the manager and no objection thereto was made by defendant. Defendant assented thereto not only by silence but by continuing his employment under that condition. The contract of employment contained a cancellation clause so that if the defendant did not agree thereto he could have cancelled his contract, terminated his employment and stood upon what he considered his rights as to the then existing folders. Not having done so he assented to plaintiff's claim of ownership of the folders and is now also estopped from claiming otherwise.
The plaintiff is entitled to judgment for the recovery of the "Estate Folders."
"* * * where the final relief is substantially a recovery of chattels, the jurisdiction of courts of equity embraces suits to compel the restoration or delivery of possession of specific chattels of such a peculiar, uncommon, or unique character that they cannot be replaced by means of money, and are not susceptible of being compensated for by any practicable or certain measure of damages, and in respect of which the legal actions of replevin, detinue, or trover do not furnish a complete remedy. This particular exercise of the jurisdiction extends, for like reason, to suits to compel the delivery of deeds, muniments of title, and other written instruments, the value of which cannot, with any reasonable certainty, be estimated in money." Pomeroy's Equity Jurisprudence, Fifth Edition, Vol. 1, § 185, p 263 at 264.
In Schrafft v. Wolters, 61 N.J. Eq. 467, the matter involved securities which at the time of the death of the testator were in the custody of the trust company. Thereafter the executors became vested with his title, and so, in point of law, the trust company held the securities for them. Mrs. Wolters had neither the custody nor the legal title but she had the key and would not consent to the delivery of the securities, and the trust company would not surrender them on the ground that "it would be improper and unwise on *516 their part to act in the matter without an order or decree of this court." Vice-Chancellor Stevens held: "The doctrine applicable to the delivery up of title deeds also `applies to other instruments and securities, such as bonds, negotiable instruments and other evidences of property, which are improperly withheld from the persons who have an equitable or legal interest in them.' Story Eq. Jur., § 703. The following, among other cases, illustrate this rule: Banta v. Moore, 2 McCart. 97, 103; Pattison v. Skillman, 7 Stew. Eq. 344; Midland Railroad Co. v. Hitchcock, 7 Stew. Eq. 278; Stanton v. Percival, 5 H.L. Cas. 257. And it is particularly applicable to the case of agents and others who, like the trust company, in a certain sense stand in a fiduciary relation to the plaintiff. Wood v. Rowcliffe, 2 Phil. 382." And see Industrial Electronics Corp. v. Harper, 137 N.J. Eq. 171, 43 A.2d 883; affirmed, 137 N.J. Eq. 530, 45 A.2d 671.
Judgment for plaintiff.