## Kasula Estate.

Argued September 24, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*James Francis Lawler,* with him *Cyril D. Brain, Isidor Ostroff,* and *Ostroff & Lawler,* for appellants.

*Thomas H. Welsh,* with him *Metz, Cook, Hanna & Kelly,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 25, 1974:

In 1972, appellants petitioned the Orphans' Court Division of the Court of Common Pleas of Allegheny

County to set aside a 1969 decree of distribution. The court refused the requested relief and dismissed the petition. We affirm.

On June 25, 1949, decedent, Mihaly Kasula, then a resident of the Soviet Union, died intestate. For a number of years decedent had resided in Allegheny County and had been employed by the United States Steel Corporation. His estate's only asset was $2,949.80 in the corporation's pension fund. Letters of administration were granted to decedent's grandson, a resident of Allegheny County, on October 30, 1961.

On September 6, 1963, the orphans' court entered a decree which, inter alia, awarded to the Commonwealth, as custodian, the sum of $1,524.53, representing intestate shares of a purported son and daughter of decedent said to be living in the Soviet Union.[1] These

---

[1] Neither appellants' identities nor entitlement were then adjudicated. In his 1963 petition captioned "petition to pay balance for distribution," the administrator clearly questioned the existence of any Soviet heirs, there stating:

"There has been no verification of the existence of Nikolai . . . and Anna . . . both of whom are supposed to be living in the U.S.S.R. . . .

". . . [S]aid petitioner . . . does not believe the existence of said individuals in the U.S.S.R. and therefore requests the court at this time to make distribution [awarding a two-thirds interest to the state treasury without escheat] for a limited time, and if the two alleged heirs . . . do not claim said funds, then said monies to be decreed to [the known heirs]."

This decree was only a partial distribution to known heirs and payment of the balance to the state treasury without escheat. The administrator proposed this distribution to avoid suspending the entire estate for an indefinite period. Because of uncertainty in 1963 as to the existence of a possible aunt and uncle, the administrator merely requested the court to hold the balance of the estate for a reasonable time to see if any competent evidence would surface showing the existence of any other heirs. The 1963 decree by its own terms was not final. Only after waiting six years, during which no evidence of entitlement was produced, did the administrator, in 1969, petition the court to decree final distribution. The

shares were to be held by the Commonwealth without escheat subject to the provisions of the Act of July 28, 1953, P.L. 674.[2] Subsequently, on August 12, 1969, upon petition of the administrator, a final decree of distribution was entered. That decree directed the Commonwealth to repay to the estate the sums held, and directed the administrator to distribute that amount to known intestate heirs, three grandchildren of decedent living in the United States. Pursuant to that decree, the balance of the estate was distributed.

Almost three years thereafter, on June 19, 1972, a petition to set aside the 1969 decree of distribution was filed by the substitute attorney in fact for the alien claimants.[3] That petition was dismissed. Appellants' exceptions were then argued before the court en banc and dismissed. This appeal ensued.

The critical question presented is whether appellants offered sufficient proof to establish their claim as heirs of Mihaly Kasula. The orphans' court as factfinder and the court en banc determined that they did not. We conclude that this determination is supported by the evidence, and therefore affirm.

Manifestly, a court may not decree distribution to persons whose identity as proper beneficiaries of a decedent's estate has not been established. In cases such as this, involving intestacy, two facts must be proved.

---

dissent mistakenly elevates a 1963 partial custody-type distribution to the status of a final adjudication of appellants' kinship.

[2] This Act, frequently called the "Iron Curtain Act," was since declared unconstitutional, *Democzuk Estate*, 444 Pa. 212, 282 A.2d 700 (1971); see *Zschernig v. Miller*, 389 U.S. 429, 88 S. Ct. 664 (1968), and was repealed. Act of June 30, 1972, P.L. 508, No. 164, § 3.

[3] A power of attorney executed in the Soviet Union on May 15, 1969, named the New York law firm of Wolf, Popper, Ross, Wolf & Jones to represent the foreign claimants. New York counsel subsequently nominated James Francis Lawler, Esq., of Philadelphia as substitute attorney in fact.

A claimant must demonstrate not only his "identity as a qualified statutory heir but also that such an heir in fact existed." *Demczuk Estate*, 444 Pa. 212, 218, 282 A.2d 700, 703 (1971).

The burden of proving heirship rests with the claimant. *Demczuk Estate*, supra; *Krepinevich Estate*, 433 Pa. 78, 248 A.2d 844 (1969); *Bokey Estate*, 412 Pa. 244, 194 A.2d 194 (1963); *Davis Estate*, 365 Pa. 605, 76 A.2d 643 (1950); *Link's Estate (No. 1)*, 319 Pa. 513, 180 A. 1 (1935). The standard of proof necessary to sustain that burden was set forth by this Court in *Bokey Estate*, supra at 250, 194 A.2d at 197. We there said that " 'the evidence must be so *clear, precise and definite* in quality and quantity as to satisfy the court below that the relationship claimed existed.' (Emphasis supplied)" (quoting *Link's Estate (No. 1)*, 319 Pa. 513, 522-23, 180 A. 1, 5 (1935)). Here, neither the auditing judge nor the court en banc were satisfied that appellants established the claimed relationship.

Both the existence of foreign heirs and specifically appellants' identity as heirs were in controversy here. During the twenty-three years following decedent's death, appellants presented only the following evidence in support of their claim. On August 16, 1960, Iniurcolleguia, an association of lawyers in Moscow, U.S.S.R., dispatched a letter to the United States Steel Corporation Pension Fund. That letter stated that a certain Nikolai Kasula, an appellant here, asked the association to represent him as a beneficiary of his father's estate. Approximately one year later, another letter was sent. That letter stated that the association also represented one Anna Fentsik, a daughter of decedent, who had also survived her father. On May 15, 1969, a power of attorney was executed before a Soviet notary by persons purporting to be Anna and Nikolai, and forwarded to the United States. No other evidence was offered by appellants.

The evidence in opposition to appellants' claim established that repeated requests by counsel for the administrator for evidence of appellants' entitlement to share in the estate were unproductive. His numerous letters remained unanswered. Moreover, decedent's grandson testified that neither his mother nor his grandfather (who had lived with him when he resided in the United States) ever mentioned the existence of any children living in the Soviet Union. He further testified that he had "little interest in the relatively small sum of money involved . . . ." The court, in evaluating the evidence, declared that "[the grandson's] testimony impressed us as being true."

On the evidence before it, the orphans' court concluded that appellants had failed to prove either the existence of any foreign heirs or their own identity as intestate beneficiaries. The court consequently refused to disturb the earlier 1969 adjudication and dismissed appellants' petition. This action was approved by the court en banc.

This Court's scope of review in cases of this nature is well defined. On appeal, it is not for the appellate court to assess the credibility of the testimony. Our evidentiary review is limited to a determination of whether the findings of fact of the chancellor are supported by sufficient, competent evidence.

"*We will not retry this case.* The question for us to consider is, first, whether there is evidence to support the findings of fact and whether the findings of fact support the decree. The court below and the court en banc made a thorough review of all the evidence and arrived at certain findings. If the evidence supports the findings and the findings in turn justify the decree, the decree will not be set aside . . . ." *Pusey's Estate,* 321 Pa. 248, 260, 184 A. 844, 849 (1936) (emphasis in the original, citations omitted); accord, *Shewchuk Es-*

*tate,* 444 Pa. 249, 260, 282 A.2d 307, 313 (1971); *Mintz Trust,* 444 Pa. 189, 196, 282 A.2d 295, 299 (1971).

Appellants contend, however, that the court's findings were contrary to the evidence. Their position, it would appear, is that the recitals of kinship set forth in a power of attorney executed before a notary are conclusive proof of the facts asserted. This Court has held precisely to the contrary. *Bokey Estate,* supra at 251-52, 194 A.2d at 197-98.[4] Here the power of attorney shows only that persons purporting to be decedent's children appeared before a notary, asserted their claims of kinship, and in his presence executed the document.[5] As in *Bokey Estate,* the writing is an assertion, not proof.[6] It is obvious that this document alone or

---

[4] See also *Bobko v. Ukrainian Workingmen's Ass'n,* 71 Lackawanna Jurist 86 (Pa. C.P. 1970); *Slotkin Estate,* 40 Pa. D. & C.2d 334 (O.C. Phila. 1965), aff'd per curiam, 423 Pa. 628, 222 A.2d 597 (1966); *Martinzik Estate,* 25 Pa. D. & C.2d 701 (O.C. Phila. 1962).

[5] Any notion that the Act of April 27, 1876, P.L. 49, § 1, 28 P.S. § 223 (1958), compels the factfinder to accept as true an affiant's assertions of kinship is contrary to this Court's express holding in *Bokey Estate,* 412 Pa. 244, 194 A.2d 194 (1963). There this Court, speaking through Mr. Justice (now Mr. Chief Justice) JONES, unequivocally held that the statutory phrase "prima facie evidence of the matters therein set forth" refers *only* to matters set forth by the notary, *not to those of the affiants.* Id. at 252, 194 A.2d at 198.

Moreover, this Court in *Bokey* specifically held: " 'The essence of the notarial certificate is that the document has been executed, and that the notary knows that he is confronted by the signer, and that the signer is asserting the fact of his execution.' " Id. at 252, 194 A.2d at 198 (quoting *Scott v. Penn Title Ins. Co.,* 49 Berks County L.J. 36, 39 (Pa. C.P. 1956)). See *Sheaffer v. Baeringer,* 346 Pa. 32, 36, 29 A.2d 697, 699 (1943).

[6] The dissent inaccurately states the issue in this case. Neither this Court nor the orphans' court has questioned either the validity or authenticity of appellants' power of attorney. That American lawyers may, in accordance with the terms of the power, represent appellants before our courts and assert whatever rights appellants may have is not questioned. The power of attorney was

in concert with appellants' other evidence fails to establish by clear, precise, and definite proof, as required by *Bokey Estate,* either the existence of any children in the Soviet Union or the affiants' identity as decedent's heirs.[7]

In the absence of such proof, there is no basis for disturbing the court's decree.[8]

---

here given the same recognition and effect as was done in *Demczuk Estate,* 444 Pa. 212, 282 A.2d 700 (1971), and *Bokey Estate,* 412 Pa. 244, 194 A.2d 194 (1963). A claimant's right to have his interests advanced by counsel designated in a power of attorney must not be confused with the issue of proof of kinship in this case. Here the issue is whether the adjudications of the orphans' court and the court en banc that appellants did not prove their heirship are supported by the record.

[7] See *Demczuk Estate,* 444 Pa. 212, 282 A.2d 700 (1971), in which the applicable burden of proof was satisfied. In *Demczuk,* in addition to producing a power of attorney, the claimant demonstrated his identity by introducing affidavits of heirship executed by members of the village in which decedent's family resided, and copies of birth, death, and marriage certificates. Collectively, this evidence proved claimant's identity. Id. at 220-21, 282 A.2d at 704-05. See Comment, The Demise of the "Iron Curtain" Statute, 18 Vill. L. Rev. 49, 65 (1972). Obviously, such proof is lacking in this case.

For further discussion of the necessity of and means for proving kinship and identity, see Jones, Pennsylvania Custodial Statutes: Orphans' Court Proceedings for Recovery of Nonescheated Funds, 39 Temp. L.Q. 153, 164-68 (1966).

[8] The dissent erroneously contends that our decision is "an unjustified intrusion into the area of foreign affairs." However, *Zschernig v. Miller,* 389 U.S. 429, 88 S. Ct. 664 (1968), and *Demczuk Estate,* 444 Pa. 212, 282 A.2d 700 (1971), upon which the dissent relies, surely do not stand for the proposition that courts may not require proof of heirship before distribution is decreed. Requiring all claimants—foreign and domestic—to prove their entitlement is fundamental to the sound administration of estates and does not offend foreign policy.

Indeed, it has recently been observed: "The kinship of an alien heir in cases of intestacy, and the existence and identity of the heir are . . . usual matters of proof necessary to establish a valid claim to property . . . . Such qualifications are unaffected by

Decree affirmed. Each party pay own costs.

*Zschernig* since these judicial inquiries are . . . objective and reasonable. Inquiry into these matters of proof would appear to proceed from a state's right and duty to guarantee a just distribution of an estate . . . ." Recent Case Note, 72 Dick. L. Rev. 675, 681 (1968) (footnotes omitted).

Here, claimants were faced with the same burden as American claimants. Any claimant is required to prove his identity and kinship before the orphans' court can make an award in his favor.

The dissent erroneously argues that a foreign claimant having executed a power of attorney asserting the affiant's kinship is entitled to share in a decedent's estate without producing corroborative evidence even in the face of other competent and contradictory evidence which the court finds credible. If the dissenting view were to obtain, a foreign claimant by use of a power of attorney would prevail with less evidence of heirship than any other claimant.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The decision of the Court refuses to give recognition and effect to what I consider to be a valid power of attorney executed by the appellants in the Soviet Union. I, therefore, must respectfully dissent.

A recitation of the procedural history of the case to date, in more detail than that given in the Court's opinion, will serve to put the issue before us in proper perspective.

In 1961, decedent's grandson, George Perick, one of the appellees, petitioned for and was granted letters of administration in the estate of his grandfather, the decedent herein, who had died in the U.S.S.R. eleven years earlier, in 1949. In his capacity as administrator there came to Perick information that the decedent had been survived by two children, a son and daughter, living in the Soviet Union. Their names were Nicolai Michailovich Kasula and Anna Mikhailovna Kasula Fencik (the appellants herein). The administrator proposed, therefore, in his petition for distribution, that the one-third interest of each child of the decedent be

decreed to the Commonwealth of Pennsylvania, without escheat, pursuant to the Act of July 28, 1953, P. L. 674, 20 P.S. §1156 (sometimes called the "Iron Curtain Act"), and the Orphans' Court so decreed.[1] The sense of the decree was that said two-thirds share of the estate was to be held by the Commonwealth for the account of said children until such time as they might establish, in the words of the statute, their "actual benefit, use, enjoyment or control" of such funds, if transferred to them. The New York counsel for the testator's children living in the Soviet Union were advised of the award. No time limit was placed on the right of the Soviet heirs to petition for payment of their shares from the sum held in escrow by the Commonwealth.[2]

So matters stood until 1968. In that year, the United States Supreme Court, in *Zschernig v. Miller*, 389 U.S. 429, 19 L. Ed. 2d 664 (1968), declared that an Oregon statute similar to Pennsylvania's "Iron Curtain Act" was unconstitutional as an intrusion by a state

---

[1] The exact provision of the decree of distribution was as follows:

"To: Commonwealth of Pennsylvania, Department of Revenue, without escheat, the distributive shares of the following named alien beneficiaries, to be held in the State Treasury subject to the provisions of Act No. 209 approved July 28, 1953, viz:

"To: Nikolai Michailovich, son, heir, 1/3 balance 762.27

"To: Anna Mikhailovich Kasula Fencik, daughter, heir, 1/3 balance                                       762.26"

[2] In response to a request by counsel for the estate that the award be for but a limited time, the auditing judge ruled at the 1963 audit hearing: "I do not put any time limit on it because if there is ever peace with Russia, they can come into Court and get Harrisburg to release those funds. There is no time limit. It is indefinite. They cannot get it until there is some peace established between Russia and this country."

into foreign affairs of the United States. In the same year and the year following, the Pennsylvania statute was declared unconstitutional by several Orphans' Courts of this Commonwealth,[3] and in a federal court case the Attorney General of Pennsylvania conceded the unconstitutionality of the Act of 1953.[4] Soon after these declarations of unconstitutionality the administrator, on July 28, 1969, filed a petition in the Orphans' Court praying that the funds originally set aside for the Soviet children of the decedent be paid over to himself, his brother and his sister, grandchildren of the decedent, as the heirs entitled thereto. No notice to the Soviet heirs or their New York counsel was given of this petition, and on August 12, 1969, the Orphans' Court granted it, apparently without a hearing.

The appellants' petition[5] to set aside the ex parte decree of August 12, 1969 was denied on October 31, 1972. Exceptions were dismissed and a final decree en-

---

[3] *Struchmanczuk Estate*, 44 Pa. D. & C. 2d 155 (Phila. Co. 1968) ; *Kuhn Estate*, 18 Fid. Rep. 396 (Bucks Co. 1968) ; *Kwiedarawicz Estate*, 19 Fid. Rep. 568 (Schuyl. Co. 1969) ; *Adams Estate*, 19 Fid. Rep. 442 (Mont. Co. 1969).

[4] *Sapcaru v. Klein*, Civil Action No. 65-239 in the District Court of the United States for the Eastern District of Pennsylvania, November 14, 1968. The unconstitutionality of the Act was clearly intimated by our Court in its opinion in *Krepinevich Estate*, 433 Pa. 78, 86, 248 A. 2d 844, decided January 15, 1969. Thereafter in 1971, the "Iron Curtain Act" was indeed declared unconstitutional by this Court: *Demczuk Estate*, 444 Pa. 212, 282 A. 2d 700 (1971).

[5] The majority opinion notes that the time interval between the filing of the decree directing payments to the American grandchildren and the petition of appellants to set aside that decree was "almost three years". Under Section 721 of the Fiduciaries Act, Act of April 18, 1949, P. L. 512, Art. VII, §721 (now Section 3521 of the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, P. L. 508, No. 164), a petition to review a decree of distribution may be filed within five years of the date of confirmation of an account. The instant petition is analogous to the procedure there permitted.

tered December 22, 1972. It is from that decree that the Soviet heirs have appealed to this Court.

In my view, this estate was closed in 1963 when a decree of distribution was entered, no exceptions thereto were taken, and distribution was actually made in accordance therewith.[6] There was no residual right in the administrator (who had himself proposed the distribution of 1963) to come in later and seek to revoke a portion of the distribution then ordered. The Iron Curtain Act had indeed been declared invalid in the interim, but this gave no right to the American grandchildren of the decedent then to hasten to court in an endeavor to preempt the rights of the Russian children of the decedent, whose identities and entitlement had already been ascertained.[7] The fund was supposedly in the hands of the Commonwealth for the *protection* of the foreign heirs until they could demonstrate that they would receive "the actual benefit, use, enjoyment and control of the property." The fact that the statute under which the distributive shares of the Russian heirs had been held in escrow was declared unconstitutional did not negate the right of the Soviet heirs to their just shares of their father's estate; on the contrary, it merely meant that they were entitled to receive payment of the impounded funds forthwith, free of the strings imposed by the invalid statute.[8]

---

[6] I can find no warrant for the statement in the opinion of the Court [footnote 1, page 64, *supra*] that the 1963 decree was only "a partial distribution" and that the decree "by its own terms was not final". On the contrary, it disposed of the entire estate, and there was nothing to suggest a lack of finality.

[7] As this Court has pointed out, one of the conditions to bring into play a provisional distribution to the Commonwealth under the "Iron Curtain Act" is that the identity of the person or persons entitled to ultimate distribution be first established. *Bokey Estate*, 412 Pa. 244, 253, 194 A. 2d 194 (1963).

[8] This interpretation was followed by the Orphans' Court of Philadelphia in *Makery Estate*, 46 Pa. D. & C. 2d 196 (1969). In

The sole question properly before the court below on the petition to set aside the decree of August 12, 1969, under the circumstances above outlined, was the adequacy of the power of attorney presented by James Francis Lawler, Esquire, of Philadelphia, to authorize payment to him, as attorney-in-fact, of the previously escrowed monies. To that question I now turn.

The power of attorney, dated May 15, 1969, was in favor of the New York firm of Wolf, Popper, Ross, Wolf and Jones (who substituted Mr. Lawler for themselves) and was executed and acknowledged before a notary public in the U.S.S.R. The certificate of acknowledgment of the power of attorney recited, *inter alia,* that Nicolai and Anna, the donors of the power, were known to the notary as the persons indicated in the power of attorney and that they had come in person before her to execute and acknowledge the power of attorney. The notary public, as might be expected, was a Russian notary, and therein, in the view of the lower court and the majority opinion here, lay its infirmity. Had the acknowledgment been made before a consul of the United States and had he certified that he personally knew the individuals who presented themselves, the document would be of "significant probative value" in determining the identity of the acknowledgers. *Demczuk Estate,* 444 Pa. 212, 220, 282 A. 2d 700 (1971). Here, however, relying on *Bokey Estate,* 412 Pa. 244, 194 A. 2d 194 (1963), the Court holds the acknowledgment insufficient to indicate authenticity of the power of attorney because the power "shows only that persons

_____

a supplemental adjudication following the declaration of unconstitutionality of the Iron Curtain Act, President Judge KLEIN stated: "In view of our ruling in the Struchmanczuk case, supra, no impediment now exists to the immediate payment of the entire shares of said [Soviet] beneficiaries directly to them without limitations or restrictions." 46 Pa. D. & C. 2d at 198. Payment was ordered to be made to James F. Lawler as attorney-in-fact.

purporting to be decedent's children appeared before a notary, asserted their claims of kinship, and in his presence executed the document". (Majority Opinion, *supra* at 68. Footnote omitted.) *But cf. Krepinevich Estate,* 433 Pa. 78, 85, 248 A. 2d 844 (1969).

This conclusion overlooks the fact that the power of attorney here involved, while not acknowledged immediately before a United States consular officer, was duly authenticated in full compliance with the statutes of this Commonwealth.[9] Indeed, the Pennsylvania legislature expressly provided as long ago as 1876 that "[t]he official acts and exemplifications of foreign notaries in accordance with the laws of their respective countries shall be prima facie evidence of the matters set forth therein," provided there is proper certification by a United States consul as set forth in the statute.[10] Here the acknowledgment taken by the Soviet notary was duly certified to be such by an official of the Supreme Court of Ukrainian S. S. R. That certification was in turn attested by one I. B. Konzhukov, a Soviet consular officer, and to the latter's certificate was attached a certificate of his authority executed by

---

[9] The applicable statutes are the Act of April 27, 1876, P. L. 49, §1, 28 P.S. §223, and the Uniform Acknowledgment Act, Act of July 24, 1941, P. L. 490, *as amended,* 21 P.S. §291.1 *et seq.* Section 4 of the latter provides that "[t]he ackowledgment of any instrument may be made without the United States before . . . (2) a notary public of the country where the acknowledgment is made." 21 P.S. §291.4. Section 9 makes provision for the authentication of the notarial certificate which evidences the ackowledgment, as follows: "If the acknowledgment is made without the United States and by a notary public . . . of the country where the acknowledgment is made, the certificate shall be authenticated by a certificate under the great seal of state of the country, affixed by the custodian of such seal, or by a certificate of a diplomatic, consular or commercial officer of the United States accredited to that country, certifying as to the official character of that officer." *See also* 28 U.S.C. §1741 (Foreign Official Documents) ; Rule 44, Fed. R. Civ. Proc.

[10] Act of April 27, 1876, P. L. 49, §1, 28 P.S. §223.

Robie M. Palmer, Consul of the United States at the Embassy at Moscow.[11]

I do not understand *Bokey Estate, supra,* or any of our other decisions in this general field to have established a rule that only powers of attorney personally executed before a United States consul are entitled to recognition. *Bokey* and *Link's Estate,* 319 Pa. 513, 180 A. 1 (1935), on which it relied, were concerned with the quality of proof to establish "kinship which carries with it a claim of property against the claim of the State." *Bokey Estate,* 412 Pa. at 249, quoting from *Link's Estate,* 319 Pa. at 519, 520. It was held that this must be proved "by something more than a guess," and that to defeat a claim of the Commonwealth the evidence of kinship must be "so *clear, precise* and *definite* in quality and quantity as to satisfy the court below that the relationship claimed existed." *Bokey Estate,* 412 Pa. at 250, quoting again from *Link's Estate,* 319 Pa. at 522, 523. Because such proof was found wanting in *Bokey,* this Court concluded that the lower court erred in awarding the balance for distribution to the Commonwealth under the Iron Curtain Act. 412 Pa. at 253. In the case before us, however, that hurdle was jumped ten years ago. The transfer at that time to the Commonwealth under the Act of 1953 has not been challenged and is not in issue; indeed, that disposition was recommended by appellee.

The sole question, as before stated, is the authenticity of the power of attorney. By our statute, that authenticity is at least prima facie evidenced by the

---

[11] Mr. Palmer's certificate is to the effect that the attestation of Konzhukov bears his true signature and official seal, and that on the day of execution Konzhukov was Assistant Chief of the Consular Administration of the Ministry of Foreign Affairs of the Union of Soviet Socialist Republics, duly commissioned and qualified. The consular certificate ends with the statement that Konzhukov's official acts are entitled to faith and credit.

certificate of acknowledgment, and no countervailing evidence has been forthcoming.[12] For us to refuse to recognize the authority of the power of attorney here before us seems to me to be in practical effect as much an unjustified intrusion into the area of foreign affairs as was our Iron Curtain Act itself. Certainly most persons living abroad who have need to execute a power of attorney for use in this country will not find it possible or feasible, as did the claimant in *Demczuk Estate*, 444 Pa. 212, 282 A. 2d 700 (1971), to do so before a United States consul. They may well live in remote areas and be of modest means; there is no reason why they should have to travel to a city where we maintain a consulate. Our legislation was adopted for the very purpose of allowing recognition and credit to be extended to acts of notaries public of other countries. The invidious distinction now perpetuated by the Court is a vestigial remnant of the "Cold War" attitude so prevalent in the post-World War II period. *See Zschernig v. Miller, supra,* 389 U.S. at 437; *Belemecich Estate,* 411 Pa. 506 (1963). It is out of place in today's world. Hence my dissent.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.

---

[12] For a modern statement of the evidentiary role of an acknowledgment, *see Clements, Trustee v. Snider,* 409 F. 2d 549, 550 (C.A. 9, 1969) : "The function of the certificate of acknowledgment is to provide prima facie proof that a document—to which it is attached but not a part—has been executed by the person whose signature appears on the document. The certificate is 'evidentiary in character and is required so as to entitle the instrument to be recorded or to render it competent evidence without further proof.' Lillard v. Walsh, 172 Cal. App. 2d 674, 342 P. 2d 82, 85 (1959)." *See also* 1 Am. Jur. 2d, Acknowledgments, §§72, 92, 94.