718 A.2d 701

JAMES J. CRAFFEY AND FLORENCE M. CRAFFEY, PLAIN-
TIFFS–APPELLANTS, v. BERGEN COUNTY UTILITIES
AUTHORITY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1998—Decided October 16, 1998.

Before Judges PRESSLER and BROCHIN.

*H. Curtis Meanor* argued the cause for appellants (*Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello*, attorneys; *Mr. Meanor*, of counsel and on the brief.)

*Keith J. Roberts* argued the cause for respondent (*Giblin & Giblin*, attorneys; *Paul J. Giblin*, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Pursuant to a resolution adopted November 24, 1982, defendant Bergen County Utilities Authority ("Authority") appointed plaintiff James J. Craffey as its "Public Participation Coordinator" for the period "commencing January 1, 1983, and *terminating* December 31, 1987 ...." (emphasis added.) The resolution provided that he was to be paid at an annual salary of $18,500, and that "on January 1st of each year of the agreement," he was to "receive an annual increase in compensation equal to the percentage increase in salaries given the Authority blue collar workers for that year." The provision continued, "In no event, shall this increase be less than five (5%) percent of the annual compensation paid to [Public Participation Coordinator] for the prior year." The parties also executed an agreement of the same date, which contained substantially the same language as the resolution, including the language

we have quoted, and which also expressly incorporated the terms of the resolution by reference.

After the December 31, 1987 expiration date of Mr. Craffey's contract, he continued to be employed by the Authority in the same capacity and with the same duties as previously. The parties did not enter into a new express contract. Insofar as we can tell from the papers submitted to us, the Authority did not adopt a resolution re-authorizing Mr. Craffey's employment until March 16, 1989. On that date it adopted a resolution establishing or reestablishing several management positions, including that of Public Participation Coordinator, setting their salary ranges and confirming the employment of the incumbents. Mr. Craffey and his position are listed on Schedule A to the resolution at a salary of $25,931, but no new agreement was executed with him or with the other listed employees.

Mr. Craffey continued to be employed in the same position through 1993. For the year 1988, he received the same salary increase to which he would have been entitled if his employment were still governed by the five-year contract. His salary for 1989 was the same as it had been for 1988. He received a 7.5 percent salary increase for 1990. His 1991 salary remained the same as it had been in 1990. In 1992, he received a four percent, and later in the year a one percent, salary increase. In 1993, his salary was reduced from $29,189 to $14,709 and then increased to $15,444. Because he remained at his 1992 salary during January 1993, his earnings during 1993 totaled $17,289. Mr. Craffey argues that it is legally significant that whenever his salary was changed, the change was effected by action of the Authority taken after the beginning of the year.

After Mr. Craffey's retirement at the end of 1993, he sued for the difference between what he had been paid and the higher salary he would have been entitled to if the salary terms, including the escalation clause, of his five-year written contract had remained in effect through 1993. He also claimed he was entitled to the higher pension, annuity and other fringe benefits which he

would have received if those benefits had been calculated on the basis of the salary that he contends he should have been paid. In addition, he sought reimbursement for 252 unused sick days calculated at what he claims should have been his 1993 salary rate. According to the affidavit of Mr. Craffey's expert, these claims total $111,010.

Mr. Craffey does not contend that the Authority voluntarily entered into any new contract with him relating to his employment after December 31, 1987. He bases his claim that he was underpaid from 1989 through 1983 solely on the contention that, as a matter of law, when his employment continued after the expiration of his five-year contract on December 31, 1987, he became an employee under a contract from year to year and, once each new year had begun, the terms of his five-year written contract, including the salary terms, could not be changed unilaterally.

On cross-motions for partial summary judgment, the Law Division ruled that Mr. Craffey's five-year employment contract was not renewed from year to year after December 31, 1987, and that after that date, he was an employee at will. Only the issue of reimbursement for unused sick days was left open for trial. During a bench trial, Mr. Craffey sought to show that he was entitled to be paid for 251 unused sick days; the Authority contended that he was entitled to payment for only 230 days. The court found in favor of the Authority. To reimburse him for his 230 unused sick days, it awarded him a judgment for $18,272.53, including prejudgment interest.

Mr. Craffey argues on appeal, as he did before the Law Division, that "under settled New Jersey law when an employee employed under a contract of employment for a specified term continues to work in the same position after expiration of the contract term, absent an express understanding to the contrary, the law implies a renewal of that contract of employment according to its provisions, but not in excess of one year." On the issue of reimbursement for unused sick leave, he asserts that he is entitled to "reimbursement ... in accordance with the BCUA sick

leave policy promulgated August 18, 1992." He also contends that he and Mrs. Craffey, who asserts an interest by reason of her right to a pension if she survives her husband, are entitled to prejudgment interest on their claims. The Authority has not cross-appealed.

Mr. Craffey's theory that, as a matter of law, his five-year contract, including its provision for the annual escalation of his salary, renewed itself from year to year after December 31, 1987, implies that the Authority was free to change the terms of his employment or fire him as of any date after the end of 1987, provided it gave him reasonable advance notice during the calendar year prior to any modification or discharge. In fact, by continuing to pay Mr. Craffey in 1989 at his 1988 rate, the Authority did notify him that the salary terms of his employment contract were no longer in effect. If he had asserted his claim then, when his salary expectations were first disappointed, the Authority might have agreed or disagreed with his claim, negotiated it, or fired him out of hand. Instead, he withheld his claim during his employment, lulled the Authority into inactivity by his silence, and, as he was about to retire, confronted it with a demand for $111,000. Under these circumstances, even if the claim were otherwise valid, it would be barred by estoppel. *See Van Houghten v. City of Englewood,* 124 *N.J.L.* 425, 428, 12 *A.*2d 668 (Sup.Ct.1940) (holding that policemen who repeatedly accepted a salary which, because of difficult times, was less than they would have normally received, had waived their rights to any claim for a larger salary for the previous year); *Home Life Ins. Co. v. Morris,* 7 *N.J.Super.* 512, 515, 71 *A.*2d 909 (Ch.Div.1950) (holding that employee who remained silent and continued employment after insurance company claimed ownership of certain records assented to the claim of ownership and was estopped from claiming otherwise).

Furthermore, none of the cases upon which Mr. Craffey relies support his argument that his employment contract was renewed from year to year as a matter of law. All of them, expressly or

implicitly, invoke only a rebuttable presumption of renewal. *See Art Wire & Stamping Co. v. Johnson*, 141 *N.J. Eq.* 101, 103, 56 *A.*2d 11 (Ch.1947)("Since nothing to the contrary appears in the bill, I conclude that the covenant [contained in the expired employment contract] entered into the implied contract of employment and is still in force."), *aff'd o.b.* 142 *N.J. Eq.* 723, 61 *A.*2d 240 (E. & A.1948); *Dennis v. Thermoid Co.*, 128 *N.J.L.* 303, 305, 25 *A.*2d 886 (E. & A.1942)("[T]he continuance of the employment beyond the first period gives rise to the inference that it was to continue for a like period."); *Gordon v. Stevens Institute of Technology*, 31 *N.J.Super.* 177, 178, 106 *A.*2d 15 (App.Div.1954) ("[U]nder the circumstances [a professor hired for the college year], as the parties concede, they impliedly entered into another contract for another year with the same salary and upon the same conditions of service."); *Hollister v. Fiedler*, 18 *N.J.Super.* 171, 174, 86 *A.*2d 809 (Ch.Div.) ("[W]here one is employed for a definite period and continues in the employment after the expiration of that period without a new express contract, it is presumed that the employment is continued on the terms of the original contract."), *rev'd on other grounds*, 22 *N.J.Super.* 439, 92 *A.*2d 52 (App.Div.1952). In other words, under these cases, an employment contract for a fixed term is evidence that the parties intended the employment to continue from year to year, and the burden of proof is shifted to the party who asserts the contrary.

In the present case, any presumption of renewal is disproved by the undisputed facts. First of all, both the resolution appointing Mr. Craffey to his five-year term and his written contract of employment expressly define the period of his employment as "commencing January 1, 1983, and *terminating* December 31, 1987. . . ." (emphasis added.) The express provision for termination is inconsistent with any extension of the contract after that date. Secondly, the Authority's March 16, 1989 resolution authorized the same salary for Mr. Craffey for 1989 that he had received in 1988; the resolution and the payment of the salary which it authorized demonstrate that the Authority did not intend

to renew his employment after December 31, 1987 on the terms of his prior contract. Thirdly, despite Mr. Craffey's claim that every pay check the Authority gave him after January 1989 was a breach of contract, he accepted his salary and continued to work at his job. Apart from any issue of estoppel, this conduct was inconsistent with any claim on his part that he did not implicitly agree that his employment after December 31, 1987, was no longer subject to the salary terms of his written contract.

Finally, although the terms under which an employee has been working are usually evidence of the terms on which the employer and the employee expect the employment to continue, we hold that a contract of employment for a fixed term may no longer be taken to imply a contract of employment from year to year after completion of the fixed term. In *Bernard v. IMI Systems, Inc.,* 131 *N.J.* 91, 618 *A.*2d 338 (1993), our Supreme Court expressly overruled the holding of *Willis v. Wyllys,* 98 *N.J.L.* 180, 119 *A.* 24 (E. & A.1922), that an employment contract which provides for a salary to be paid at a stated amount per year is presumptively a contract from year to year. In the course of discussing the New Jersey law that it was overruling, the Court noted that in *Dennis v. Thermoid Co., supra,* the Court of Errors and Appeals had "found that not only did the contract guarantee employment for one year, but if the employment continued for a day after the first year, the contract guaranteed an additional year's work." *Bernard, supra,* 131 *N.J.* at 104, 618 *A.*2d 338 (citing *Dennis, supra,* 128 *N.J.L.* at 305, 25 *A.*2d 886). That, of course, is the presumption on which Mr. Craffey relies in the present case. The Supreme Court pointed out that the *Willis* rule had its origins in a feudal, primarily agricultural economy, and it no longer served a justifiable purpose. Referring to its prior decisions that had "definitively established employment-at-will as the prevailing doctrine in this state ...," *ibid.,* the Court reiterated the currently prevailing rule: "[B]oth employers and employees commonly and reasonably expect employment to be at-will, unless [the contrary is] specifically stated in explicit, contractual

terms." *Id.* at 106, 618 *A.*2d 338. This proposition is inconsistent with the anachronistic presumption that the expiration of a contract of employment for a fixed term automatically creates a contract of employment from year to year thereafter. We conclude, therefore, that that presumption is no longer the law of this State.

Mr. Craffey relied only on the claimed presumption that his five-year contract was automatically renewed from year to year after its express termination date. He did not offer any other evidence in support of his claim. If he had, summary judgment could not have been granted. *See Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995). However, because there is no such evidence in the record and no suggestion that any such evidence would have been available, partial summary judgment was properly granted rejecting Mr. Craffey's claim that he continued to have a contractual right to be paid according to his five-year employment agreement after December 31, 1987.

This holding disposes of all of Mr. Craffey's claims except his contention that the Authority's rules entitle him to a larger number of sick days than he was given credit for. That claim raised an issue of fact which the Law Division decided in the Authority's favor after trial. The court's finding has adequate support in the trial record and we are therefore bound by it. *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

The judgment appealed from is therefore affirmed.