

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-21-2004

# Fanelli v. Centenary College

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4039

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Fanelli v. Centenary College" (2004). *2004 Decisions.* Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4039
_____

ANGELA S. FANELLI.

<u>Appellant</u>

v.

CENTENARY COLLEGE

_____

On Appeal from the United States District Court
for the District of New Jersey
Civil Action No. 02-CV-02004
District Judge: Honorable Mary Little Cooper

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2004

_____

Before: ROTH, BARRY, and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed:      October 21, 2004)
_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

The Appellant, Angela S. Fanelli ("Fanelli"), filed a timely appeal from the District Court's grant of summary judgment in favor of the Appellee, Centenary College ("Centenary"). The District Court had jurisdiction because of diversity of citizenship. 28 U.S.C. § 1332(a). We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1291. We will affirm.

I.

Because we write solely for the benefit of the parties, we recount the facts and procedural history only as they are relevant to the following discussion. Centenary is a private college located in New Jersey. By letter dated July 2, 1999, Centenary offered to hire Fanelli as its Director of Graduate Programs. The letter, which was signed by Thomas Brunner, Ph.D. ("Brunner"), Centenary's Vice President for Academic Affairs, read in pertinent part as follows:

> On behalf of Centenary College, I am pleased to offer you the position of Director of Graduate Programs, effective August 2, 1999. This is a twelve-month position with an annual salary of $49,000, payable twice monthly, and appropriate fringe benefits commensurate with your appointment. You will become an administrative officer of the College with all of the rights and responsibilities commensurate with that standing, and hold faculty status commensurate with that of Associate Professor.

> Please make an appointment with the Director of Personnel to submit the appropriate documents and to discuss the fringe benefits that come with this position. I look forward to working with you over the coming years.

(Appendix ("App.") at 158.) On July 26, 1999, Fanelli countersigned Centenary's letter,

thereby accepting Centenary's offer of employment.[1]

Unbeknownst to college administrators, Fanelli was defending against criminal charges at the same time that she accepted Centenary's offer and began working at the college. Approximately two years earlier, federal authorities had charged Fanelli and her husband with embezzling more than $1 million in employee pension and profit-sharing funds at a medical practice where Fanelli served as the business administrator. Fanelli did not inform Centenary of these charges, nor did she disclose her subsequent guilty plea. These matters came to light, however, in July 2001, when college administrators at Centenary received an anonymous mailing containing photocopies of various newspaper articles chronicling Fanelli's indictment and guilty plea.

On July 26, 2001, Centenary administrators confronted Fanelli and offered her an opportunity to resign, which Fanelli accepted. The following day, however, Fanelli informed Centenary that she was withdrawing her resignation on the ground that it had been induced by undue harassment and without due process. (App. at 283.)

Several days later, Centenary advised Fanelli that she was not entitled to due process under Centenary's Constitution because, as an administrative officer, Fanelli's

---

[1] Although the parties have not drawn our attention to it, there is some question as to whether Centenary's offer was still outstanding when Fanelli countersigned the letter. Centenary's letter stated that Fanelli should indicate her acceptance by signing and returning a copy of the letter no later than July 19, 1999, but Fanelli did not sign the letter until July 26, 1999. Because this issue was not addressed below and the parties have assumed an effective acceptance, we will do the same.

continued employment at the college was terminable at will. Centenary further explained that Fanelli's faculty status as an assistant professor, "while entitling [her] to academic freedom, [did not afford her] any due process rights under the Constitution of the College for faculty" because only full-time faculty were entitled to due process. (App. at 285.)

In April 2002, Fanelli filed suit against Centenary in the District Court. She alleged in her complaint that she was entitled to the status of a full-time faculty member and therefore could only be terminated for cause. The single count in her complaint alleged that Centenary had breached her employment contract. Following discovery, Centenary moved for summary judgment.

The District Court granted Centenary's motion and dismissed Fanelli's complaint.[2] The District Court found that only full-time faculty were entitled to due process under the Centenary Constitution and that Fanelli was not a full-time faculty member. The District Court also concluded that there was no employment contract and that her employment was governed by the "Staff Handbook," which provides that employees may be terminated at will. Finally, the District Court determined that, even if there was an employment contract, it turned into an employment-at-will contract

---

[2] When a district court grants a motion for summary judgment, it should enter judgment for the prevailing party, not dismiss the complaint. *See Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 121 n.2 (3d Cir. 1999) (stating that "the grant of summary judgment and the dismissal of the complaint are inconsistent"). We will disregard the District Court's reference to dismissal of Fanelli's complaint and treat the record as a summary judgment record. *See Strozyk v. Norfolk Southern Corp.,* 358 F.3d 268, 270-71 (3d Cir. 2004).

-4-

following the first year because Fanelli was not expressly reappointed to her position.

Fanelli filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

On review of a grant of summary judgment, we apply a plenary standard of review. *See Carter v. McGrady*, 292 F.3d 152, 157 (3d Cir. 2002). In doing so, we assess the record using the same summary judgment standard that guides district courts. *See Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Applying that standard here, we conclude that the District Court properly granted summary judgment in favor of Centenary.

Fanelli contends that Centenary hired her for a specific term and therefore the terminable-at-will doctrine does not apply. We agree with Fanelli that she was hired for a specific term, but it does not necessarily follow that Centenary could not terminate her without cause. Centenary's letter offered Fanelli "a twelve-month position with an annual salary of $49,000, payable twice monthly." (App. at 158.) While the New Jersey Supreme Court has held that "[a] salary or benefit package stated in annual terms does not, standing alone, entitle an employee to year-to-year employment," Bernard v. IMI

-5-

Sys., Inc., 618 A.2d 338, 346 (N.J. 1993) (involving employment letter stating "[y]our compensation will be at the rate of $80,000 per annum to be paid semimonthly"), Centenary went one step further in this case and stated in rather unambiguous terms that Fanelli was being hired for "a twelve-month position." A jury could find, based on that evidence, that the parties agreed to a one-year employment contract commencing on August 2, 1999 and ending on August 1, 2000. But this does not end the matter.

The alleged breach occurred on July 26, 2001, well beyond the initial one-year term. In her complaint, Fanelli asserted that Centenary reappointed her to a second term. (See App. at 21 ¶11.) Apparently, Fanelli was referring to a December 22, 2000 letter from the former President of Centenary which informed Fanelli that the board of trustees had authorized a pay increase for all eligible employees, including Fanelli. (App. at 382.) Unlike the earlier letter, however, the December 2000 letter did not state that Fanelli was being hired for a certain term; rather, it merely stated her new salary. Moreover, Centenary introduced an affidavit demonstrating that the letter sent to Fanelli was a form letter sent to many Centenary employees, and that a typical reappointment letter uses language clearly indicating a renewed contractual relationship for a fixed term, such as "[y]our faculty appointment will be renewed beginning with . . . and ending with . . . ." (App. at 395.)

It is true, however, that both Fanelli and Centenary continued to act as though there was a contract in place beyond the expiration of the initial term. At one time, such

conduct would have given rise to an inference under New Jersey law that the parties intended to renew their contract for another fixed term. See Dennis v. Thermoid Co., 25 A.2d 886, 887 (N.J. 1942) ("Certainly, the continuance of the employment beyond the first period gives rise to the inference that it was to continue for a like period."). But that is no longer the case today.

In Bernard v. IMI Systems, Inc., 318 A.2d 338 (N.J. 1993), the New Jersey Supreme Court abandoned "the 'English view' of employment law which 'tends to a construction establishing a contract for a definite term if this can be spelled out of the language used.'" Id. at 341 (quoting Willis v. Wyllys Corp., 119 A. 24, 24 (N.J. 1922)). In its place, the court adopted "the 'American view' which states that 'a hiring is at-will unless the contrary be fairly plain.'" Id. (quoting Willis, 119 A. at 24). As at least one panel of the New Jersey Superior Court Appellate Division has found the effect of the Bernard decision is that "a contract of employment for a fixed term may no longer [in light of Bernard] be taken to imply a contract of employment for year to year after completion of the fixed term." Craffey v. Bergen County Utils. Auth., 718 A.2d 701, 704 (App. Div. 1998). Thus, assuming that, following Bernard, the burden is on the plaintiff to come forward with evidence demonstrating that the parties intended to renew a fixed term contract, the District Court correctly held that Fanelli did not submit evidence that would give rise to a material issue of fact.

In the absence of an employment contract, a New Jersey employee is terminable at

will, and can be fired with or without cause. See Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 617 (D.N.J. 2001). There is an exception, however, where there is an implied promise in an employment manual that an employee will be fired only for cause. See Woolley v. Hoffman-LaRoche, Inc., 491 A.2d 1257, 1258 (N.J.), modified on other grounds, 499 A.2d 515 (N.J. 1985) ("We hold that absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will.").

Here, the District Court found that, although the Centenary Constitution provides that full-time faculty members cannot be terminated without cause and due process, Fanelli was not a full-time faculty member. On appeal, Fanelli contends that the constitutional protections are not limited to full-time faculty and that, even if they are, there is a genuine material issue of fact as to whether she was a full-time faculty member. We cannot agree. The Constitution expressly states that "[e]xcept where otherwise specified . . . and where appropriately applicable to the entire Faculty in general, . . . the term 'Faculty' in this document refers to full-time teaching Faculty." (App. at 176.) The Constitution then states: "So, whereas all other persons holding full-time academic appointment may enjoy academic freedom on the one hand, on the other *they are not subject to the general provisions of this Constitution regarding such matters as . . . termination, and the like*." (Id.) This leaves no doubt that the termination protections

-8-

afforded by the Constitution are limited to full-time faculty. The District Court properly found that Plaintiff was not a member of the full-time faculty because she was not treated like the other full-time faculty and did not receive any of the formal procedures that are laid out in the Constitution for full-time faculty. Consequently, any reliance by Fanelli on the language in her original appointment letter that she would "hold faculty status commensurate with that of Associate Professor" is meritless because she was not a full-time faculty member.

## III.

We are satisfied that the District Court Judge's analysis and conclusion are correct and therefore we will affirm the judgment of the District Court.